# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **14 C 737** |
| | ) | |
| **CITY OF CHICAGO, CHICAGO POLICE** | ) | **Judge John Z. Lee** |
| **OFFICERS ANTHONY VILLARDITA,** | ) | |
| **THOMAS JOHNSON, BRIAN KILLACKY,** | ) | |
| **TERRY O'CONNOR, RICK ABREU,** | ) | |
| **ROBERT DELANEY, SEAN GLINSKI,** | ) | |
| **MICHAEL BERTI, and UNIDENTIFIED** | ) | |
| **EMPLOYEES OF THE CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Taylor ("Taylor") has sued the City of Chicago (the "City") and Chicago Police Officers Anthony Villardita ("Villardita"), Thomas Johnson ("Johnson"), Brian Killacky ("Killacky"), Terry O'Connor ("O'Connor"), Rick Abreu ("Abreu"), Robert Delaney ("Delaney"), Sean Glinski ("Glinski"), Michael Berti ("Berti"), as well as unidentified employees of the City of Chicago pursuant to 42 U.S.C. § 1983. Taylor alleges Defendants violated his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution and brings additional claims for malicious prosecution, intentional infliction of emotional distress, and conspiracy pursuant to Illinois law. Defendants have moved to dismiss Taylor's Complaint in its entirety. For the reasons provided herein, the Court grants in part and denies in part Defendants' motions.

# Factual Background[1]

On November 16, 1992, Jeffrey Lassiter and Sharon Haugabook were shot and killed in Lassiter's apartment at 910 W. Agatite in Chicago, Illinois. Compl. ¶ 10. The property manager, who lived upstairs, called 911 at 8:43 p.m., immediately after he heard the gunshots. *Id.* ¶ 11. Police arrived at the scene within three minutes. *Id.*

At the scene of the murders, the Defendant Officers learned that there was one witness, Faye McCoy, who lived in the building and was an active member of the community. *Id.* ¶ 17. McCoy had seen four men leaving Lassiter's apartment building shortly after the shooting and told the Defendant Officers that they were men from the West Side of Chicago, who recently had been selling drugs in the community, including someone named "Goldie." *Id.* ¶¶ 17, 19. None of the persons she saw was Plaintiff or any of the other young men that she knew from her neighborhood. *Id.* The Defendant Officers had McCoy look through an array of seven photographs of potential suspects, and she identified the photograph of Dennis "Goldie" Mixon as one of the four men she saw leaving the murder scene. *Id.* ¶ 20.

During the initial investigation, several other witnesses identified Mixon as a drug dealer, who recently had engaged in a physical altercation with Lassiter. *Id.* ¶ 21. The Defendant Officers were also aware that, prior to Lassiter's murder, Mixon had taken over Lassiter's apartment building to sell crack. *Id.* As a result of these statements, Mixon became the prime suspect in the killings. *Id.* ¶ 22. Unfortunately, the Defendant Officers were unable to find Mixon, and the case went cold for several weeks; that is, until Lewis Gardner was arrested on unrelated charges. *Id.*

---

[1] The facts in the background section are taken from Plaintiff's Complaint and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Gardner was a fifteen-year-old juvenile with a 70 IQ score, who lived with his family near the victim's apartment. *Id.* ¶ 23. The Defendant Officers interrogated him for over fifteen hours, during which time they kept Gardner's mother out of the interrogation room, psychologically abused Gardner, and told him he could go home if he would provide a statement parroting what the Defendant Officers told him. *Id.* ¶ 24. As a result of the Defendant Officers' coercion, Gardner falsely implicated himself, Taylor, and five other innocent young men in the murders. *Id.*

Once the Defendant Officers obtained Gardner's false confession, they arrested Taylor and the five other men identified by Gardner—Akia Phillips, Paul Phillips, Joseph Brown, Deon Patrick, and Rodney Matthews—and coerced all of them into making false confessions. *Id.* ¶ 25. Neither Taylor nor any of the other men had any involvement in the murders. *Id.*

When the Defendant Officers arrested Taylor on December 3, 1992, he was seventeen years old and sleeping at a shelter. *Id.* ¶ 28. The Defendant Officers brought Taylor in for questioning at what was then Area 6 police headquarters. *Id.* When questioned, Taylor denied having any knowledge of the crime. *Id.* ¶ 29. He told the Defendant Officers that on the date of the murders he was actually in police custody on an unrelated offense and thus had an airtight alibi. *Id.* ¶¶ 13, 30. In fact, at 6:45 p.m. on November 16, 1992, around two hours before the murders took place, Chicago Police officers in the 23rd District had arrested Taylor on a disorderly conduct charge. *Id.* ¶ 13. According to the Department's own records, Taylor was received by the 23rd District lockup at 7:25 p.m., and his fingerprints were sent to the Department Headquarters at 7:35 p.m. *Id.* ¶ 14. Taylor eventually bonded out at 10:00 p.m., more than an hour after the murders. *Id.* ¶ 15. Because Taylor was in police custody during the

3

commission of the murders, it stands to reason that he could not have participated in them. *Id.* ¶ 16.

Despite having this information, the Defendant Officers arrested Taylor anyway and allegedly punched and hit Taylor with a flashlight while he was in custody. *Id.* ¶ 29. The Defendant Officers threatened Taylor that if he did not give them information about the murders, they would continue the beating. *Id.* On the other hand, if he confessed, the Defendant Officers told Taylor, they would allow him to go home. *Id.* Believing the Defendant Officers' statements that he would be released, Taylor confessed to the murders even though he had not committed them. *Id.*

Within days of Taylor's arrest, the Defendant Officers obtained a copy of an arrest report that confirmed that Taylor had been in jail at the time of the shootings. *Id.* ¶ 31. They also received a copy of Taylor's bond slip confirming he had not been released from the 23rd District lockup until 10:00 p.m. that night. *Id.*

Notwithstanding the evidence of Taylor's innocence, the Defendant Officers allegedly proceeded to frame Taylor for the murders. *Id.* ¶ 32. For example, the Defendant Officers fabricated an encounter between police officers and Taylor on the street near Lassiter's apartment around 9:30 p.m. on the night of the murders. *Id.* ¶ 33. This fictional encounter was memorialized in a fraudulent police report that was created weeks after the purported encounter and well after the Defendant Officers had learned that Taylor was in police custody at the time in question. *Id.* The Defendant Officers never disclosed their fabrication to the prosecutor, the court, or Taylor. *Id.*

In addition, the Defendant Officers allegedly coerced a witness named Adrian Grimes, by means of threats and a promise of leniency on unrelated charges, into falsely stating that he

remembered seeing Taylor at a park near Lassiter's apartment just prior to the murders. *Id.* ¶ 34. Grimes would later recant this statement, and the Defendant Officers never disclosed to the trial prosecutor or the defense the manner in which they induced Grimes to make the false identification. *Id.*

The Defendant Officers also tried, unsuccessfully, to coerce McCoy into falsely identifying Taylor from a lineup. *Id.* ¶ 35. When McCoy denied having seen Taylor or any of his co-defendants on the night of the murders, the Defendant Officers prepared a false report stating that McCoy had identified Taylor as one of the perpetrators and falsely testified to the same. *Id.* The Defendant Officers never disclosed their attempted coercion of McCoy or the falsity of the report either to the prosecutors or to Plaintiff's defense team. *Id.*

The Defendant Officers also withheld other evidence corroborating Taylor's alibi. *Id.* ¶ 36. For example, the Defendant Officers interviewed Taylor's cellmate at the 23rd District lockup, who confirmed that Taylor was in police custody with him at the time of the murders. *Id.* Despite the obvious exculpatory value of that information, neither the cellmate's identity nor the information he provided to the Defendant Officers was disclosed to the prosecutors or the defense, and instead was buried in the Defendant Officers' "street files." *Id.*

As a result of the Defendant Officers' misconduct, Taylor was wrongfully convicted of first-degree murder, armed robbery, and home invasion. *Id.* ¶ 37. Taylor was sentenced to life in prison and two concurrent thirty-year prison terms with not eligibility for parole. *Id.* The only evidence against Taylor at trial was his coerced confession and the coerced and false testimony of Grimes. *Id.* There was no physical evidence tying Taylor to the crime. The fingerprints developed from the crime scene did not match his or those of his co-defendants, and there was no

5

DNA evidence. *Id.* ¶ 38. As such, according to Taylor, were it not for the Defendant Officers' misconduct, he would not have been prosecuted or convicted. *Id.* ¶ 39.

In 2013, Taylor's conviction was vacated. *Id.* ¶ 40. The State dismissed the charges against him, and he was released after spending more than twenty years in prison for the crimes that he did not commit. *Id.* ¶ 41. On January 23, 2014, Taylor was granted a Certificate of Innocence by the Circuit Court of Cook County, which found him innocent of all of the offenses for which he was wrongfully incarcerated. *Id.* ¶ 42.

## **Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

## **Analysis**

Plaintiff asserts numerous claims under federal and state law. Count I of the Complaint alleges violations under 42 U.S.C. § 1983 against the Defendant Officers pursuant to the Fifth and Fourteenth Amendments for forced self-incrimination stemming from Taylor's coerced, false confessions. Count II asserts an additional claim under § 1983 against the Defendant

Officers pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), claiming that Defendants' actions violated Taylor's due process right to a fair trial. Additional § 1983 claims allege that the Defendant Officers failed to intervene to prevent the violation of these constitutional rights (Count III) and conspired to deprive Taylor of these rights (Count IV). Lastly, Plaintiff asserts claims under state law against the Defendant Officers for malicious prosecution, alleging they subjected Taylor to judicial proceedings for which there was no probable cause and fabricated and withheld evidence (Count VI); intentional infliction of emotional distress (Count VII); and civil conspiracy (Count VIII).

As for the City Defendant, Count V alleges a *Monell* claim under § 1983, claiming that the City had certain policies, practices and customs that governed the actions of the Defendant Officers when they engaged in the wrongful behavior that deprived Taylor of his constitutional rights. Defendants challenge all eight counts.

## I. Self-Incrimination in Violation of the Fifth Amendment Claim (Count I)

Count I alleges a violation of the Fifth Amendment against the Defendant Officers based on their use of Taylor's coerced confession as the primary evidence against him at trial. "The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964), provides that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (quoting U.S. Const. amend. V).

The Officer Defendants move to dismiss Count I, arguing that the statute of limitations preclude its filing. Because Section 1983 does not have an express statute of limitations, federal courts hearing claims under § 1983 adopt the forum state's limitations period for personal injury claims. *Ashafa v. City of Chi.,* 146 F.3d 459, 461 (7th Cir. 1998). Accordingly, in Illinois, the

statute of limitations for § 1983 claims is two years. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008).

Although the limitations period for § 1983 claims is based upon state law, it is federal law that determines when such claims begin to accrue. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Generally, a § 1983 claim begins to accrue—and the clock on the statute of limitations begins to run—"when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citation and quotation omitted).

With respect to Fifth Amendment coerced confession claims in particular, "[o]rdinarily, the period of limitation . . . begins to run upon the use of the improperly obtained admissions at trial." *Tillman v. Burge*, 813 F. Supp. 2d 946, 969-71 (N.D. Ill. 2011) (citations omitted); *see Chavez v. Martinez*, 538 U.S. 760, 766-67 (2003) (holding that a Fifth Amendment claim alleging a constitutionally invalid confession becomes actionable when an individual makes a self-incriminating statement and the statement is used as evidence against him in a criminal proceeding). It also is worth noting that, because the statute of limitations is an affirmative defense, the Officer Defendants have the burden of establishing that the claim is time-barred. *See Jogi v. Voges*, 480 F.3d 822, 836 (7th Cir. 2007); *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 862-63 (7th Cir. 2004).

To address the statute of limitations defense, Plaintiff argues that *Heck v. Humphrey* governs the accrual of his claim and, thus, the claim did not accrue until his conviction was vacated in 2013. 512 U.S. 477, 487 (1994). Under *Heck*, where a judgment in favor of a civil plaintiff would "necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has

8

already been invalidated." *Id.* Put another way, under *Heck*, a plaintiff who has been convicted of a crime is barred from bringing a § 1983 claim that is inconsistent with the validity of that conviction until the conviction has been set aside. *Rodriguez v. Cook Cnty., Ill.*, 664 F.3d 627, 630 (7th Cir. 2011). As a corollary, where *Heck* bars a § 1983 claim, the claim does not begin to accrue until the conviction is invalidated. 512 U.S. at 487; *see also Wallace*, 549 U.S. at 393.

For their part, the Defendant Officers contend *Heck* is inapplicable here. In support, they cite to *Wallace*, which held that Fourth Amendment false-arrest claims are not barred by *Heck* and, thus, accrue at the time of arrest. According to the Defendant Officers, under the reasoning in *Wallace*, Plaintiff's Fifth Amendment claim also accrued at the time of the coerced confession in 1992, rendering the instant claim untimely. But *Wallace* is not controlling here, because the Supreme Court expressly limited its consideration to Fourth Amendment false arrest claims and did not reach invalid confession claims under the Fifth Amendment. *See id.* at 387 n.1 ("We expressly limited our grant of certiorari to the Fourth Amendment false-arrest claim.").

Post-*Wallace*, the Seventh Circuit has had three opportunities to address whether *Heck* applies to Fifth Amendment invalid confession claims.[2] First, in an unpublished order, *Franklin v. Burr*, 535 F. App'x 532, 533-34 (7th Cir. 2013), the Seventh Circuit held that where a plaintiff

---

[2] Since *Wallace*, the courts in this district have been split on whether the *Heck* bar rule applies to Fifth Amendment invalid confession claims. *Compare Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1188 (N.D. Ill. 2013) (Leinenweber, J.) (holding that *Heck* applies to Fifth Amendment coerced confession claim because success on plaintiff's claim would imply invalidity of conviction); *Kitchen v. Burge*, 781 F. Supp. 2d 721, 735 (N.D. Ill. 2011) (Bucklo, J.) (same); *Wilson v. O'Brien*, No. 07 C 3994, 2011 WL 759939, at **5-7 (N. D. Ill. Feb. 25, 2011) (Kocoras, J.) (same); *Tillman*, 813 F. Supp. 2d at 969-71 (collecting cases); *Walden v. City of Chi.*, 755 F. Supp. 2d 942, 956 (N.D. Ill. 2010) (Castillo, J.); *Andrews v. Burge*, 660 F. Supp. 2d 868, 881 (N.D. Ill. 2009) (Zagel, J.) (same); *Hill v. City of Chi.*, No. 06 C 6772, 2009 WL 174994, at *5-6 (N.D. Ill. Jan. 26, 2009) (St. Eve., J.) (same), *with Patrick v. City of Chi.*, ___ F. Supp. 3d ____, 2014 WL 7204501, at **5-6 (N.D. Ill. Dec. 17, 2014) (Guzman, J.) (holding *Heck* is inapplicable because Fifth Amendment coerced confession claims are not in the category of claims that necessarily impugn a plaintiff's conviction); *Saunders v. City of Chi.*, Nos. 12 C 9158, 12 C 9170, 12 C 9184, 2013 WL 6009933, at *6 (N.D. Ill. Nov. 13, 2013) (Dow, J.) (same); *Caine v. Burge*, No. 11 C 8996, 2012 WL 2458640, at *8 (N.D. Ill. June 27, 2012) (Kendall, J.) (same); *Lanza v. City of Chi.*, No. 08 C 5103, 2009 WL 1543680, at *3 (N.D. Ill. June 2, 2009) (Anderson, J.) (same).

has pleaded guilty to the crime, *Heck* does not bar a Fifth Amendment claim based on an invalid confession because "[t]here is no necessary inconsistency between the propositions that (a) a conviction based on a guilty plea is valid, and (b) the police violated the accused's rights at the time of arrest or interrogation." Accordingly, in *Franklin*, the § 1983 claim was deemed to have accrued at the time of the coerced confession.

The next year, the Seventh Circuit decided another case involving a guilty plea, *Matz v. Klotka*, 769 F.3d 517, 531 (7th Cir. 2014). In *Matz*, the Seventh Circuit held that *Heck* did bar the plaintiff's Fifth Amendment claim because his allegedly invalid confession "figured prominently" in the criminal trial court's sentencing determination and, therefore "success on his claim would call into question his sentence."

Finally, in 2014, the Seventh Circuit issued its decision in *Moore v. Burge*, 771 F.3d 444, 445 (7th Cir. 2014). In *Moore*, the plaintiffs alleged that police officers had tortured them to extract incriminating statements. The district court granted defendants' motion to dismiss the claims, holding that *Heck* had not barred plaintiffs from filing their claims earlier. The Seventh Circuit affirmed the district court's grant of the motion to dismiss, stating *Heck* was inapplicable because the police misconduct at issue "is actionable *whether or not* a suspect confesses, and *whether or not* any statement is used in evidence at trial" and "does not (at least, need not) imply the invalidity of any particular conviction." *Id.* at 446 (emphasis provided).

This language in *Moore* is instructive, because it appears to describe something other than the archetypal Fifth Amendment coerced confession claim, such as the one alleged here, which requires a self-incriminating statement and use of the statement in a criminal proceeding. *See Chavez*, 538 U.S. at 766-67. In fact, the court in *Moore* expressly noted that the *Moore* plaintiffs "stress the injuries they say they suffered at the hands of the police before judicial

proceedings began." *Id.* at 446. To the extent that the plaintiffs in that case were "arguing that police violated their rights by giving false testimony, or that during trial prosecutors withheld material exculpatory evidence about misconduct during their interrogations," the Seventh Circuit acknowledged that "*Heck* indeed bars relief until a conviction is set aside." *Id.*

From these three cases, the following principles emerge. Where a criminal defendant pleads guilty and his allegedly invalid confession plays no part in the criminal proceeding, *Franklin* instructs that *Heck* is inapplicable, and thus a Fifth Amendment claim based upon an invalid confession will be deemed to have accrued when the coerced confession took place. On the other hand, where a confession is used in the criminal proceeding and a civil claim that successfully challenges the confession would effectively nullify the conviction or sentence, *Heck* will bar such a claim, and the claim does not accrue until after the conviction is overturned or otherwise invalidated. Finally, where a plaintiff alleges a coerced confession (by torture or otherwise), to the extent that the constitutional claim is actionable in and of itself without regard to whether any self-incriminating statements were extracted or such statements were used during a criminal proceeding, *Heck* would neither bar such a claim nor defer its accrual. Consistent with *Heck* and *Wallace*, the crux of the inquiry in all three situations remains the same—whether the civil claim based upon a coerced confession "necessarily impugns the validity of the conviction." *Tillman*, 813 F. Supp. 2d at 970; *see also Patrick*, 2014 WL 7204501 at *6 (noting that "*Heck's* delayed accrual applies only to the kinds of § 1983 claims that, if successful, would invariably impugn a plaintiff's conviction").

Here, Plaintiff alleges that the Defendant Officers coerced him into making self-incriminating statements and these statements were later used during the criminal proceeding to convict him. Compl. ¶¶ 29, 67-69. Furthermore, Taylor alleges as part of his claim that his

conviction rested largely on the unconstitutional use of these coerced statements at trial. *Id.* ¶ 38. Because success as to Plaintiff's Fifth Amendment claim would necessarily imply the invalidity of his conviction, the Court concludes that, under *Heck's* deferred accrual rule, Taylor's claim did not begin to accrue until his conviction was set aside in 2013. Taylor filed his Complaint in February 2014, well within the two-year statute of limitations. Accordingly, his Fifth Amendment coerced confession claim is not time-barred, and the motion is denied as to Count I.

## II. Due Process: Fabrication of Evidence & Suppression of *Brady* Material (Count II)

Taylor's due process claim is two-fold. He alleges that the Defendant Officers violated his due process rights by fabricating evidence. He also asserts that they deliberately withheld exculpatory evidence. The Court addresses each claim in turn.

A fabrication-of-evidence due process violation occurs when the criminal defendant is harmed by "the police or prosecutor [who] manufactures evidence that he knows to be false." *Petty v. City of Chi.*, 754 F.3d 416, 422 (7th Cir. 2014); *see Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("*Fields II*"); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959). In contrast, where a plaintiff attempts to assert a due process claim based upon allegations that police officers coerced statements from co-defendants or witnesses, he or she does not state a due process claim, but rather, a malicious prosecution claim. *See Petty*, 754 F.3d at 421. This is because an officer "fabricating evidence that she knows to be false is different than getting 'a reluctant witness to say what may be true.'" *Id.* at 422 (quoting *Fields II*, 740 F.3d at 1112).

Here, Taylor alleges that the Defendant Officers manufactured evidence by coercing his co-defendants (*i.e.*, Akia Phillips, Paul Phillips, Joseph Brown, Deon Patrick, and Rodney Matthews) to implicate Taylor in the subject murders and by coercing Grimes to state that he saw Taylor near Lassiter's apartment prior to the murders. In a slightly different vein, Taylor also

12

claims that the officers created two false police report, the first stating that McCoy had identified Taylor from the lineup, and the second recounting a fabricated encounter between police officers and Taylor near the scene of the murders at the relevant time period.

To the extent that the Defendant Officers argue that Taylor's due process claim based on the alleged coercion of co-defendants and Grimes is in reality a malicious prosecution claim, their point is well taken. Adhering to *Petty*, such a claim is, in essence, one for malicious prosecution; therefore, the Court dismisses Taylor's due process claim based on such coercion. That said, to the extent the Defendant Officers argue that the alleged fabrication of false police reports also fails to support a cognizable due process claim, the Court disagrees. The Seventh Circuit has continued to recognize the viability of a due process claim based upon fabrication of evidence. *See Petty*, 754 F.3d at 422; *Fields II*, 740 F.3d at 1114; *see also Whitlock v. Brueggemann*, 682 F.3d 57, 583 (7th Cir. 2012) ("The actions of an official who fabricates evidence that later is used to deprive someone of liberty can be both a but-for and proximate cause of the due process violation.")

Next, Taylor contends that the Defendant Officers violated his due process rights under *Brady* by deliberately withholding exculpatory and impeaching material. "To succeed on a *Brady* claim, a plaintiff must show that: (1) the suppressed evidence is either exculpatory or impeaching and is favorable to the accused; (2) the government, either willfully or inadvertently, suppressed the evidence; and (3) the suppressed evidence resulted in prejudice." *Petty*, 754 F.3d at 423. The duty to disclose "extends to the police and requires that they similarly turn over exculpatory . . . evidence to the prosecutor." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008) (citing *Youngblood*, 547 U.S. at 870). A plaintiff must show that the withholding or

suppression of the evidence "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

In *Engel v. Buchan*, 710 F.3d 698, 709-10 (7th Cir. 2013), the plaintiff alleged that prosecutors had committed *Brady* violations by failing to disclose that they had paid one of the government's key witnesses to testify against the plaintiff and by fabricating false reports. The district court denied defendant's motion to dismiss, and the defendant filed an interlocutory appeal. The Seventh Circuit affirmed, holding that the allegations, when read as a whole, adequately stated a claim. Similarly, in *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001), the plaintiff claimed that the police officers had concealed how they had induced a witness to implicate him. The Seventh Circuit held that the plaintiff had a "due process claim in the original sense of that phrase—he did not receive a fair trial."

Similarly, here, Taylor alleges that Defendant Officers "[fabricated and] hid exculpatory evidence that would have conclusively proven Plaintiff's innocence." Compl. ¶ 2. Specifically, Taylor alleges that the Defendant Officers never disclosed: (1) their misconduct in coercing several of his co-defendants into making false statements implicating him in the murders; (2) the true nature of the fraudulent police reports as well as McCoy's identification of him in the lineup; (3) the coercion of Grimes by use of threats and offers of leniency with respect to unrelated charges; (4) the interview of Anderson, who corroborated that Taylor was in police custody at the time of the murders; and (5) CPD's implementation of its "street files" policy that resulted in the systematic suppression and fabrication of *Brady* material by CPD officers, including by the Defendant Officers. *See id.* ¶¶ 26–27, 31, 33–36, 43–50. These allegations, together with the facts alleged in the rest of the complaint, are sufficient to state a *Brady* claim.

14

Defendants nevertheless argue that "[i]f plaintiff's assertions are true, he knew that he was in lockup and, as such, the false nature of this evidence was not suppressed" because "[t]he police are under no *Brady* obligation to tell plaintiff again what he already know." Defs.' Mem. Supp. Mot. Dismiss 10. However, Taylor's knowledge of his innocence does not mean he was aware of the various methods employed by the police to ensure his conviction. *See, e.g., Patterson v. Burge*, 328 F. Supp. 2d 878, 889 (N.D. Ill. 2004) (distinguishing plaintiff's own coerced confession from evidence obtained outside the interrogation room in the context of a *Brady* claim). Taken to its logical conclusion, Defendants' argument would preclude any innocent criminal defendant from bringing a *Brady* claim because he would already know that any incriminating evidence was false. Defendants provide no authority for such a sweeping pronouncement, and the allegations in this case aptly demonstrate its indefensibility. The complaint alleges a detailed tapestry of wrongdoing on the part of the police in their efforts to obtain Plaintiff's conviction at trial; much of these activities took place outside of his presence and about which he had no knowledge. Accepting all of Taylor's allegations as true, he has adequately alleged a *Brady* due process claim against the Defendant Officers.

## III.   Remaining Federal Claims (Counts III, IV, and V)

Defendants also move to dismiss Taylor's claims of failure to intervene (Count III), conspiracy (Count IV), and unconstitutional practices and procedures under *Monell* (Count V) on the sole ground that he has not pleaded an underlying constitutional violation. As already held, with the exception of Taylor's due process claim based on the alleged coercion of his co-defendants and Grimes, Taylor has successfully asserted cognizable constitutional violations in this case, and Defendants' motions to dismiss are denied in this respect.

## IV. State Law Intentional Infliction of Emotional Distress (Count VII)

Turning to Plaintiff's state law claims, Defendants move to dismiss Taylor's intentional infliction of emotional distress ("IIED") claim on the grounds that the claim is untimely. Defs.' Mot. at 7. In Illinois, the Tort Immunity Act places a one-year limitations period on claims such as this. *See* 745 Ill. Comp. Stat. 10/8-1. Defendants' argument hinges on when the statute of limitations period began to run—in 1992, the date of Taylor's arrest, or 2013, when his conviction was vacated.

In *Bridewell v. Eberle*, the Seventh Circuit unequivocally stated that "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." 730 F.3d 672, 678 (7th Cir. 2013); *see, e.g., Barrow v. City of Chi.*, No. 13 C 8779, 2014 WL 1612712, at *6 (N.D. Ill. Apr. 21, 2014) (St. Eve, J.); *Cairel v. Alderden,* No. 09 C 1878, 2014 WL 916364, at *10 (N.D. Ill. Mar. 6, 2014) (Grady, J.). *Bridewell* forecloses any argument that the IIED claim constitutes either a continuing tort or violation. *See* 730 F.3d at 678 ("[t]he idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either."). Taylor does not strongly disagree with this interpretation, citing only two district cases decided prior to *Bridewell*. Thus, the Court holds that Plaintiff's IIED claim is untimely, and Defendants' motions to dismiss are granted as to Count VII.

## V. Remaining State Law Claims (Count VI and VIII)

Defendants do not separately move to dismiss Taylor's state law malicious prosecution and conspiracy claims. Rather, Defendants argue that should the Court grant the motion as to the federal claims, it should then decline to exercise supplemental jurisdiction over the remaining

16

state law claims. As discussed above, because the Court denies Defendants' motion as to the federal claims, it declines to relinquish supplemental jurisdiction as to the state law claims.

## **Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part [Dkt. 46, 49]. The Court dismisses Counts II, III, and IV only to the extent that these counts are based on an alleged due process violation resulting from the Defendants' alleged coercion of his co-defendants and Grimes. The Court dismisses Count VII (intentional infliction of emotional distress claim) with prejudice. The motions are denied in all other respects.

**IT IS SO ORDERED.**               **ENTERED   2/19/15**

**John Z. Lee**
**United States District Judge**