IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 737 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

    Defendants filed a motion to compel arguing that Plaintiff Taylor improperly asserted attorney-client privilege in declining to answer certain questions and produce certain documents. The Magistrate Judge granted in part and denied in part the motion [219], and Taylor filed an objection to the Magistrate Judge's order [248]. For the reasons stated below, the Court adopts the order granting Defendants' motion to compel in part and modifies it in part.

**STATEMENT**

    "The Federal Rules of Civil Procedure provide that when parties object to a magistrate judge's order, district judges are to review nondispositive decisions for clear error and dispositive rulings de novo." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 594–95 (7th Cir. 2006) (citing Fed. R. Civ. P. 72). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

    Taylor has advanced a due process argument based on *Brady* material that was allegedly not turned over during his criminal trial. Although Taylor's complaint identifies various types of exculpatory evidence that was not turned over, the Magistrate Judge identified two types as relevant to the motion to compel: (1) evidence relating to the officer Defendants who allegedly coerced him into confessing and (2) evidence relating to Taylor's cellmate, James Anderson, while Taylor was detained at the time that the murders took place. *See* Mem. Op. & Order 9/22/15 at 6, ECF No. 219. Because the Magistrate Judge deemed certain communications between Taylor and his attorney central to the two *Brady* arguments, she granted Defendants' motion to compel. *See id.* at 6–14. Additionally, the Magistrate Judge ruled that Taylor's failure to object to testimony from his post-conviction counsel resulted in express waiver of the attorney-client privilege. *See id.* at 15–17.

    Taylor raises three arguments in his objection to the Magistrate Judge's order. Initially, Taylor contends that the Magistrate Judge misconstrued his *Brady* claim. The order granting Defendants' motion to compel is based on the assumption that one of Taylor's *Brady* claims is

for exculpatory evidence regarding his own allegedly coerced confession. *See id.* at 6–9. Based on that assumption, the Magistrate Judge held that Taylor's conversations with his lawyer about the confession were no longer privileged because they were central to this specific *Brady* claim. According to Taylor, however, he has never stated a *Brady* claim based on his own confession. The Court agrees.

Taylor's complaint does not assert a *Brady* claim based on the failure to turn over exculpatory evidence of his own allegedly coerced confession. Indeed, the Court's order on a prior motion to dismiss interpreted Taylor's *Brady* claims as being based on the following exculpatory evidence:

> (1) [the officers'] misconduct in coercing several of his co-defendants into making false statements implicating him in the murders; (2) the true nature of the fraudulent police reports as well as McCoy's identification of him in the lineup; (3) the coercion of Grimes by use of threats and offers of leniency with respect to unrelated charges; (4) the interview of Anderson, who corroborated that Taylor was in police custody at the time of the murders; and (5) CPD's implementation of its "street files" policy that resulted in the systematic suppression and fabrication of Brady material by CPD officers, including by the Defendant Officers.

Mem. Op. & Order 2/19/15 at 14, ECF No. 163. Defendants argue that Taylor's complaint does state a *Brady* claim based on his own confession, but none of the paragraphs cited supports that contention. *See* Defs.' Response Obj. at 3–4, ECF No. 279 (citing Compl. ¶¶ 25–27, 36, 48, 55–45, ECF No. 1). Although Taylor's complaint does mention his own coerced confession as part of the factual background, it never bases a *Brady* claim on the confession or the conduct of the officers in obtaining the confession. In fact, it is not entirely clear that Taylor would be able to do so, because, unlike with the confession of his co-defendants, Taylor was present and aware of the coercion used for his own confession. *See Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003), *overruled on other grounds by Wallace v. City of Chi.*, 440 F.3d 421 (7th Cir. 2006); *see also Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 772–73 (N.D. Ill. 2012) ("[A] coerced confession alone cannot constitute a *Brady* violation, as no 'suppression' occurs because the plaintiff is aware of his own confession."). Accordingly, the Magistrate Judge's order is modified to reflect that Taylor has not raised a *Brady* claim based on his own coerced confession, and his communications with his attorney on the subject are protected by the attorney-client privilege.

Next, as part of his case, Taylor asserts that he was in custody at the time of the murders at issue and claims that the police were aware of this after they had interviewed Taylor's cellmate, James Anderson. *See* Compl. ¶ 36. In her order, the Magistrate Judge found that, by asserting a *Brady* claim based on Defendants' failure to turn over this evidence, Taylor has waived the attorney-client privilege as to any communications he may have had with his criminal defense attorney regarding the identities of his cellmates. Taylor objects, arguing that, while Defendants were free to ask Taylor's attorney what facts he knew about Anderson at that time, they are not entitled to know what Taylor told him about Anderson (or Taylor's other cellmates) due to the attorney-client privilege. *See* Pl.'s Obj. at 6 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)).

The Court agrees with Magistrate Judge Finnegan's determination that, by asserting a *Brady* claim based upon Defendants' failure to provide Anderson's identity to him, Taylor placed at issue not only his attorney's knowledge about Anderson, but also the ways that Taylor's counsel could have discovered Anderson's identity, including communications from Taylor regarding his cellmates on the night in question. The following testimony from Taylor's attorney elucidates this point:

> Q. All right. Did you know how many other people were in the cell with Mr. Taylor during the time he said that he was in police custody on November 16, 1992?
>
> A. I don't know.
>
> Q. Okay. Did you inquire of Mr. Taylor that information?

Diamond-Falk Dep. at 265:15–21, ECF No. 202, Ex. 1. Instead of answering the follow-up question, Taylor's attorney asserted the attorney-client privilege. If, based on what Taylor told him, his attorney could have discovered Anderson's identity with reasonable diligence, this would be relevant to Taylor's *Brady* claim.

For his part, Taylor argues that Defendants could have limited the questions to whether Taylor's attorney became aware of Anderson's existence prior to trial and what efforts he made to find him. *See* Pl.'s Obj. at 9. But as the deposition transcript above shows, Defendants first limited the questions to facts surrounding Taylor's cellmates. When Taylor's attorney stated he did not know the answer to the question, Defendants were entitled to ask what information Taylor's attorney had at the time regarding this subject matter, from what source, and what, if any, efforts the attorney made to determine the identity of the cellmates, including asking his client.

Moreover, contrary to Taylor's objection, the Magistrate Judge's holding does not suggest that a plaintiff waives the attorney-client privilege over all communications with counsel whenever he files a *Brady* claim. Rather, the scope of the waiver is narrow: where a plaintiff brings a *Brady* claim based upon the nondisclosure of a particular fact, the plaintiff waives the privilege with respect to communications that he or she may have had with defense counsel about that fact and any efforts made by the plaintiff or plaintiff's attorney to discovery that fact. This is what Magistrate Judge Finnegan's order holds, and Taylor's objection is overruled.

Lastly, Taylor argues that the Magistrate Judge mistakenly found that Taylor waived the attorney-client privilege when his attorney allowed his post-conviction attorney, Kathleen Zellner, to testify at her deposition about communications with Taylor. *See* Pl.'s Obj. at 10–11. Taylor notes that attorney-client privilege can only be waived by the client and argues that Zellner could not waive it by testifying. The Court disagrees. When Taylor's lawyer failed to object during Zellner's deposition and allowed her to testify about Taylor's communications with her, Taylor waived the privilege. *See United States v. Sanders*, 979 F.2d 87, 92 (7th Cir. 1992) (holding that the defendant had waived the attorney-client privilege by failing to object when his attorney testified at trial); *Abbott Labs. v. Airco, Inc.*, 1985 WL 3596, *8 ("That the attorney is called as a witness and discloses confidential communications does not abrogate the privilege so

long as the client objects to the disclosure of any confidential communications."). Thus, Taylor's objection to Magistrate Judge Finnegan's finding of waiver is overruled.

Accordingly, the Court modifies the Magistrate Judge's order as stated in this order and overrules Taylor's objections in all other respects.

Date: 8/12/16                                                                 /s/ John Z. Lee

4