# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **14 C 737** |
| | ) | |
| **v.** | ) | **Judge John Z. Lee** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Daniel Taylor spent more than 20 years in prison for two murders that he did not commit. He has now sued the City of Chicago and various individual police officers alleging they coerced a false confession from him and hid exculpatory evidence that would have proven his innocence. Currently before the Court is Taylor's objection [305] to the Magistrate Judge's order finding that Taylor waived the psychotherapist-patient privilege as to records of treatment he received before he was arrested. For the reasons provided below, the Court overrules Taylor's objection.

## <u>Background</u>

In his complaint, Taylor is seeking to recover for the "emotional pain and suffering caused by losing 20 years in the prime of his life." Compl. ¶ 63, ECF No. 1. "He missed out on the ability to share holidays, births, funerals and other life events with loved ones, the opportunity to fall in love and marry and to pursue a career, and the fundamental freedom to live one's life as an autonomous human

being." *Id.* As a result, Taylor "suffered tremendous damage, including physical sickness and injury and emotional damages." *Id.* ¶ 65.

As part of discovery into Taylor's allegations of emotional injuries, Defendants subpoenaed records of Taylor's treatment. The particular records at issue here are from his time at Yellowstone Boys & Girls Ranch. Taylor was there in 1992, prior to his arrest, and received mental health treatment. In response to Defendants' request for those documents, Taylor argued that the records were protected by the psychotherapist-patient privilege.

Defendants filed a motion to compel the records. *See* Mot. Compel, ECF No. 264. The Magistrate Judge held that Taylor had waived the privilege by asserting the type of emotional damages that he did. *See* Mem. Op. & Order at 11–12, 20–21, ECF No. 298. In order to determine whether the Yellowstone records should be turned over, the Magistrate Judge ordered an *in camera* review to determine their relevancy to Taylor's damages. *See id.* at 21–22. Taylor objects to the finding of waiver. *See* Pl.'s Obj., ECF No. 305.

## Analysis

### A.    The Psychotherapist-Patient Privilege and Waiver

Federal Rule of Evidence 501 authorizes federal courts to define the boundaries of privilege "in light of reason and experience." In 1996, the Supreme Court accepted that invitation and established the psychotherapist-patient privilege under federal common law. *See Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). In doing so, the Court recognized the importance of confidentiality for effective psychotherapy. *See id.* at 10. Importantly for this case, the Court noted in a footnote

that, like other testimonial privileges, the psychotherapist-patient privilege is subject to waiver. *See id.* at 15 n.14.

In the 20 years since the Supreme Court's opinion in *Jaffee*, federal courts have tried mightily to define whether and to what extent a plaintiff waives the psychotherapist-patient privilege when he files a civil lawsuit seeking damages for emotional distress. The decisions addressing this issue have converged around three approaches: the narrow approach, the broad approach, and the garden-variety approach. Each approach attempts to strike the appropriate balance between the privacy rights of the plaintiff, on the one hand, and the need for the defendant to obtain information to contest the plaintiff's claims, on the other.

Under the narrow approach, a plaintiff waives the privilege only when she affirmatively relies on her communications with the psychotherapist or calls the therapist as a witness. *See Fitzgerald v. Cassil*, 216 F.R.D. 632, 636 (N.D. Cal. 2003). Analogizing to the attorney-client privilege, courts that have adopted this approach reason that the privilege is not waived merely by putting at issue the underlying substance of communications with an attorney. Instead, the attorney-client privilege is waived, for example, when the party relies on the advice of counsel as a defense. *See id.* at 367. In this way, the narrow approach would find waiver only when the plaintiff plans on using her communications with her psychotherapist to further her claim. *See id*; *see also Hucko v. City of Oak Forest*, 185 F.R.D. 526, 529–30 (N.D. Ill. 1999); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229–30 (D. Mass. 1997).

The broad approach finds waiver of the psychotherapist-patient privilege any time a plaintiff puts his emotional state at issue. *See Doe v. City of Chula Vista*, 196 F.R.D. 562, 569 (S.D. Cal. 1999) ("But to [e]nsure a fair trial, particularly on the element of causation, the court concludes that defendants should have access to evidence that Doe's emotional state was caused by something else. Defendants must be free to test the truth of Doe's contention that she is emotionally upset because of the defendants' conduct.").

The third and most prevalent approach is the so-called garden-variety approach. Under this regime, a plaintiff waives the psychotherapist-patient privilege only if she is seeking anything more than mere "garden-variety" emotional damages. *See Flowers v. Owens*, 274 F.R.D. 218, 224–25 (N.D. Ill. 2011). What exactly constitutes garden-variety damages is not easy to pin down. The most straightforward definition is: "the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized." *Kunstler v. City of N.Y.*, 2006 WL 2516625, at *9 (S.D.N.Y. Aug. 29, 2006); *see also Flowers*, 274 F.R.D. at 225–26 ("the generalized insult, hurt feelings and lingering resentment which anyone could be expected to feel given the defendant's conduct; the normal distress experienced as a result of the [claimed injury]; the negative emotions that [plaintiff] experienced essentially as the intrinsic result of the defendant's alleged conduct, but not the resulting symptoms or conditions that she might have suffered; the generalized insult, hurt feelings, and lingering resentment that does not involve a significant disruption of the plaintiff's work life and rarely involves more than a temporary

disruption of the claimant's personal life" (citations omitted)). Thus, under this approach, waiver depends on how a plaintiff characterizes her emotional harm—the more extensive and specific the description of the harm (which, presumably, would persuade a jury to award more in damages), the more likely the waiver.

The Seventh Circuit has, in fact, weighed in on the question. In *Doe v. Oberweis Dairy*, the court held, "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." 456 F.3d 704 (7th Cir. 2006) (Posner, J.). In *Oberweis,* the plaintiff sued her former employer under Title VII and sought damages for emotional distress. The court found this sufficient to waive the psychotherapist-patient privilege. *See id.* Although in not-so-many words, the court in *Oberweis* employed the broad approach. *See Beltran v. Cty. of Santa Clara*, No. C 03-3767, 2009 WL 248207, at *2 (N.D. Cal. Jan. 30, 2009) (categorizing *Oberweis* as adopting the broad approach)

Despite the holding in *Oberweis,* courts in this district have been hesitant to apply the broad approach. Instead, in various decisions that cite *Oberweis*, courts have gone on to apply either the garden-variety approach or the narrow approach. *See Caine v. Burge*, No. 11 C 8996, 2012 WL 6720597, at *2 (N.D. Ill. Dec. 27, 2012) ("Some courts have interpreted the Seventh Circuit's single post-*Jaffee* opinion on the subject as falling into the 'broad' category, but the subject was addressed only briefly and did not expressly hinge the privilege waiver on the presence of an emotional distress claim."); *Awalt v. Marketti*, 287 F.R.D. 409, 416–19 (N.D. Ill.

2012); *Noe v. R.R. Donnelley & Sons*, No. 10 C 2018, 2011 WL 1376968, at *1 (N.D.

Ill. Apr. 12, 2011). The most in-depth analysis of *Oberweis* comes from *Flowers*:

> It is not clear whether this [*i.e.*, the broad approach] is the Seventh
> Circuit's position. *Beltran v. County of Santa Clara*, [No. C 03-3767,
> 2009 WL 248207, at *2 (N.D. Cal. Jan. 30, 2009)], reads *Oberweis
> Dairy* as reflecting that it is, and the D.C. Circuit's opinion in *Koch v.
> Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007) at least hints that *Oberweis
> Dairy* can be interpreted as holding that a waiver results whenever a
> claim for emotional distress is made—although it did not have to
> decide what was meant. Prior to *Oberweis Dairy*, even Judge Kennelly
> in *Santelli* expressed the view that "[t]here is some support for this
> approach in this Circuit." 188 F.R.D. at 309. And, the phrasing in
> *Oberweis Dairy* arguably supports a narrow view of the privilege even
> where the emotional damages are claimed to be "garden variety."

*Flowers*, 274 F.R.D. at 224.

Despite its terseness, however, the rule espoused in *Oberweis* is

straightforward and unequivocal: "If a plaintiff by seeking damages for emotional

distress places his or her psychological state in issue, the defendant is entitled to

discover any records of that state." *See Oberweis*, 456 F.3d at 718. The court in

*Flowers* framed the question thus: "After *Jaffee*, the courts have been unanimous in

holding that a party may surrender the psychotherapist-patient privilege by

affirmatively placing his or her psychological state at issue in the suit. . . . The

difficulty lies in determining when that occurs." *Flowers*, 274 F.R.D. at 223. But

*Oberweis* tells us precisely when that occurs; a plaintiff places his or her

psychological state in issue "by seeking damages for emotional distress."

Moreover, when the Seventh Circuit decided *Oberweis* in 2006, it was well-

aware of the three different approaches adopted by various courts. The opinion even

cites to a section of a law review article in which the author explains the three

possible approaches. *See* Beth S. Frank, Note, *Protecting the Privacy of Sexual Harassment Plaintiffs: The Psychotherapist-Patient Privilege and Recovery of Emotional Distress Damages Under the Civil Rights Act of 1991*, 79 Wash. U. L.Q. 639, 651–57 (2001). And, in the end, the *Oberweis* court adopted the words reflecting the broad approach and cited an Eighth Circuit case, *Schoffstall v. Henderson*, 223 F.3d 818 (8th Cir. 2000), that many courts agree also applied the broad approach. *See Awalt*, 287 F.R.D. at 417; *St. John v. Napolitano*, 274 F.R.D. 12, 18 (D.D.C. 2011). Thus, the Court finds that *Oberweis* is binding precedent on this issue and will apply the broad approach.[1]

The Court also agrees with the misgivings raised by the Magistrate Judge regarding the garden-variety approach. *See* Mem. Op. & Order at 14–16. First, it is difficult to define precisely what falls within the basket of garden-variety emotional distress. For example, must a plaintiff limit her testimony at trial to a plain and simple statement that she "suffered emotional distress"? *See, e.g.*, *Santelli v. Elctro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999) (limiting plaintiff's testimony to "[b]are testimony of humiliation or disgust"). Or can she testify that she suffered "severe" or "horrible" emotional distress? *See, e.g.*, *Langenfeld v. Armstrong World Indus.*,

---

[1] At least one commentator has suggested that the result in *Oberweis* may not be inconsistent with the garden-variety approach. The commentator argues that, because the plaintiff in *Oberweis* also had a claim for intentional infliction of emotional distress, the emotional damages she was claiming were beyond the garden variety. *See* Helen A. Anderson, *The Psychotherapist Privilege: Privacy and "Garden Variety" Emotional Distress*, 21 Geo. Mason L. Rev. 117, 131–32 (2013). But the plaintiff in *Oberweis* had voluntarily dismissed her claims for intentional and negligent infliction of emotional distress prior to the district court ruling on the privilege issue. *See Doe v. Oberweis Dairy*, No. 03 C 4774, 2004 WL 1146712, at * 2 (N.D. Ill. May 21, 2004).

*Inc.*, 299 F.R.D. 547, 553 (S.D. Ohio 2014) (holding that the plaintiff's testimony that the defendant's conduct caused her to feel stressed and lose sleep were sufficiently severe to fall outside the category of garden-variety damages). Can she testify that the defendant's actions caused her to feel "sad" or "miserable" or "bummed out"? How about "depressed" (which often is used in common parlance to mean feeling "sad," "miserable," or "downhearted"? *Compare Jacobs v. Conn. Cmty. Tech. Colls.*, 258 F.R.D. 192, 196–97 (D. Conn. 2009) (holding that the plaintiff's depression made his emotional damages more than garden variety), *with Flowers*, 274 F.R.D. at 227 (noting that the plaintiff could abide by *Santelli*'s formulation of garden-variety damages by testifying that he felt depressed, anxious, and dejected).

Aside from the definitional ambiguity, the garden-variety approach could also raise practical difficulties at trial. For example, if the plaintiff chooses to testify at trial only that he "suffered emotional distress," does the defendant have to take that answer (which hardly seems fair), or can the defendant cross-examine the plaintiff and ask in what way the plaintiff believes he was emotionally harmed? And, if the plaintiff answers that question with specific examples (*e.g.*, he suffers from depression, loss of appetite, and isolation), has he then waived the privilege (thereby providing the defendant with an opportunity to obtain discovery from his psychotherapist before the trial can proceed), or has he not, because the defendant has opened the door? At least one commentator has noted the difficulties that the garden-variety approach would produce at trial. *See* Helen A. Anderson, *The*

*Psychotherapist Privilege: Privacy and "Garden Variety" Emotional Distress*, 21 Geo. Mason L. Rev. 117, 143 (2013).

For all of these reasons, the Court agrees with the Magistrate Judge's analysis and adopts broad approach articulated by the court in *Oberweis*. But, this does not mean that a request by the plaintiff for emotional distress damages exposes every communication between the plaintiff and his psychotherapist to discovery. After all, any information requested during discovery must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And a court still has the discretion to limit the use of any relevant communication at trial "to the extent that the plaintiff's interest in privacy outweighs the probative value of the information contained in the records." *Oberweis*, 456 F.3d at 718; *see* Fed. R. Evid. 403.

## B.    Taylor's Records

Applying the law of waiver of privilege to this case, the Court agrees with the Magistrate Judge that Taylor has waived the psychotherapist-patient privilege over the Yellowstone records. The Court also agrees with the Magistrate Judge's proposal that she review *in camera* any of the documents in question to determine their relevancy.[2]

---

[2]    For the sake of completeness, the Court also agrees with the Magistrate Judge that Taylor has waived the privilege even under the garden-variety approach for the reasons stated in the Magistrate Judge's order.

## **Conclusion**

For the reasons stated above, the Court overrules Taylor's objection [305] to the Magistrate Judge's ruling on Defendants' motion to compel [264]. The parties are ordered to proceed with the hearing before the Magistrate Judge on relevancy.

**IT IS SO ORDERED.**                    **ENTERED  9/28/16**

_____
**John Z. Lee**
**United States District Judge**