**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.: 14 cv 737** |
| | ) | |
| **CITY OF CHICAGO, ANTHONY** | ) | |
| **VILLARDITA #20849, THOMAS JOHNSON** | ) | |
| **#20820, BRIAN KILLACKY#20748, TERRY** | ) | |
| **O'CONNOR #20831, RICK ABREU #20796,** | ) | |
| **ROBERT DELANEY #20383, SEAN GLINSKI** | ) | |
| **#3122, MICHAEL BERTI #12881, AND** | ) | |
| **UNIDENTIFIED EMPLOYEES OF THE** | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF COMBINED MOTION
FOR SANCTIONS AND TO DISMISS**

NOW COME Defendants, ANTHONY VILLARDITA, THOMAS JOHNSON, RICK

ABREU, TERRY O'CONNOR, BRIAN KILLACKY, ROBERT DELANEY, SEAN GLINSKI

and MICHAEL BERTI, by and through their attorneys, BORKAN & SCAHILL, LTD. and for their

Supplemental Brief In Support of Combined Motion for Sanctions and to Dismiss, state as follows:

**INTRODUCTION**

On January 26, 2018, the parties were before this Court on status regarding, among other

things, Defendants' pending Combined Motion for Sanctions and to Dismiss arising from Plaintiff's,

DANIEL TAYLOR, repeated acts of perjury in connection with this case. During this status

conference, this Court indicated that it was not leaning toward recommending dismissal as a result of

Plaintiff's actions. *See* Transcript of January 26, 2018 at 17:1-17:18 (cited hereinafter as "Tr. at ___.").

However, this Court indicated that it would be recommending sanctions and requested that the parties submit briefs with specific recommendations of possible sanctions short of dismissal. *Id.* Since this Court's order of January 26, Defendants have attempted in good faith to provide some possible suggestions for such relief. However, as detailed below, it remains Defendants' position that the available non-dismissal sanctions are simply not sufficient under the facts of this case or the law governing this area.

## I.     Sanctions Short Of Complete Dismissal Would Be Neither Just Nor Workable Under The Circumstances Of This Case.

In Part II of this brief, Defendants have articulated various available options for sanctions short of complete dismissal. By doing so, Defendants do not withdraw, abandon, modify or waive their request that dismissal be entered as a sanction for Plaintiff's repeated acts of perjury in this case. Accordingly, notwithstanding any suggestions made in Part II of this brief, Defendants hereby specifically reserve any and all rights to seek review and amendment of any report and recommendation of this Court pursuant to Fed. R. Civ. P. 72(a), re-assert that dismissal should be entered under Fed. R. Civ. P. 37, 50, 54, 56, and 60, raise such issues on appeal, or pursue any other available procedural mechanism.

Moreover, as set forth in Part II *infra,* Defendants have diligently attempted in good faith to offer for consideration a number of potential remedies short of complete dismissal to address Plaintiff's perjury. *See infra* Part II. However, in the interest of candor to this Court and after exhaustively exploring substitute options, Defendants are obliged to explain to this Court that they do not believe these substitute remedies are sufficient to address the problems that Plaintiff has created in this case by his repeated criminal deception. There are several reasons for this.

First, in indicating that it did not intend to recommend complete dismissal, this Court, in essence, noted that, while the substance of Plaintiff's perjury was "material," it was "not necessary to the case" and was "one false statement relating to one material event among many other events and allegations that plaintiff is relying on to prove his claims." Tr. at 11:13-11:12:24, 12:25-13:2..

Defendants do not believe that this factual parsing of perjured subject matter is the proper consideration under governing law and under the circumstances of this case. "If perjury pays benefits when it escapes detection, but has no cost when detected, there will be far too much perjury and the accuracy of judicial decisions will be degraded." *Rivera v. Drake*, 767 F.3d 685, 686–87 (7th Cir. 2014). It is this guiding principal that directs courts to respond with dismissal when perjury is revealed regardless of whether the subject matter is important or tangential. Stated another way, perjury does not mandate dismissal simply because the specific subject matter of the perjury was misrepresented. Rather, it merits dismissal because: (1) it calls into question the entirety of the perjurer's testimony (not just that which is the specific subject matter of the perjury itself); (2) it compromises the integrity of the entire judicial system (which is wholly reliant on litigants telling the truth); and (3) permitting perjury sends an unmistakable message to other litigants that perjury is acceptable behavior and, thus, begets more perjury. *See Quela v. Payco-General Amer. Credits, Inc.*, 2000 WL 656681, *6 (N.D.Ill. 2000); *Rhodes v. LaSalle Bank, N.A.*, 2005 WL 281221, *3 (N.D. Ill. 2005)("[t]he decisions in these cases are premised on the fact that a litigant cannot be permitted to say 'oops, you've caught me,' and thereafter be 'allowed to continue to play the game'… 'Not to dismiss a case for such blatant disregard of the judicial process would 'erode the public's confidence in the outcome of judicial decision, call into question the legitimacy of courts, and threaten the entire judicial system.'"); *Brady v. United States*, 877 F.Supp. 444, 453 (C.D.Ill. 1994); *Escamilla v. Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005) *abrogated on other grounds by McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013).

The relevant case law is replete with dismissals being ordered even when the subject matter of the perjury concerns an issue that bears *little or no* relationship at all to the actual merits of the case. *See Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003)(misrepresentation of name); *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 306, 308 (7th Cir.2002)(plaintiff knowingly filed false application to proceed *in forma pauperis*); *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015)(lying on *in forma pauperis* form); *Rodriguez v. M & M/Mars*, 1997 WL 349989, *2 (N.D. Ill. 1997)(lying about prior criminal record in a deposition). Indeed, the courts find dismissal appropriate even when the case as a whole shows demonstrable merit. *See Dotson*, 321 F.3d at 669 ("[W]e note that [Plaintiff's] civil rights case may well have had some merit. But, we cannot allow a plaintiff to so abuse the court system in order to avoid criminal justice, yet obtain civil reward. If [Plaintiff] sought to expose the "truth" of what occurred on January 1, 1998, he should not have begun the lie that now leads to the dismissal of his case."); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 782 (7th Cir. 2016)("The court considered the possibility—indeed, it expressly assumed—that Ramirez may have had a meritorious case of employment discrimination, and that dismissal would foreclose Ramirez from pursuing relief for that injury."); *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2006 WL 2434031, *1 (N.D. Ill. 2006)("[A]ssessment of the merits of the case are irrelevant to a determination of whether to enter default judgment as a sanction for gross misconduct."); *Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 2002 WL 215535, *2 (N.D. Ill. 2002)("[T]his court believes that at some point attorney or party misconduct may rise to such a level that the probable merits become essentially irrelevant.").

Second, this Court's analysis as articulated on January 26 too narrowly construes the significance of Plaintiff's perjury in this case. The subject matter of this perjury concerned an occurrence which: (1) directly contradicted Plaintiff's alibi of being in a police lock up at the time of the murders; (2) formed the sole basis for suing two defendants and formed an integral part of

4

Plaintiff's Fabrication of Evidence and Malicious Prosecution claims; and (3) was designed to create evidence of a conspiracy whereby this encounter itself was entirely made up weeks later to attempt to rebut Plaintiff's lock up alibi.

More importantly, however, the perjured version of the events was clearly being pursued for the strategic purposes of portraying Plaintiff as an individual who would never "snitch" on a friend or fellow gang member to the police. This denial was almost certainly designed to not only make the conduct of the officers seem worse (i.e. completely making up an encounter vs. simply changing the time) but, also, to portray Plaintiff as a person who would never willingly snitch to the police on a fellow gang member. The significance of this prior encounter cannot be overstated. The truth is that Plaintiff obviously had no qualms whatsoever about assisting the police (even if it meant snitching on a friend and fellow gang member). Indeed, there was nothing at all for Plaintiff to gain by assisting Officers Berti and Glinski in locating his friend and fellow gang member on the evening of the murders. Yet, a polite request for help was all it took for Plaintiff to turn on a friend and rat out a member of his gang.

This incident was a serious strategic problem for Plaintiff's theory of a coerced and fabricated confession which allegedly had to be "beat" out of him. Specifically, the detective's version of the events is that Plaintiff gave one of the quickest confessions they had ever seen in a murder case. It does not take a great logical leap to see the similarity between a person who volunteers to help the police find a friend in a narcotics investigation and one who similarly tells detectives several weeks later about the involvement of this same gang in a murder investigation. Thus, the relevance of the subject of Plaintiff's perjury stretches far beyond the specific facts of the Berti/Glinski encounter into the most important issues in this case.

Finally, it is important to re-iterate that the misconduct at issue is at the absolute apex of severity. As this Court repeatedly recognized at the January 26 hearing, this conduct was not mere misstatement or inconsistency or immaterial misstatement but, in fact, involved the repeated commission of a federal crime in the context of the very same case in which he sought relief. *See* Tr. at 7:6-7:11 ("The first requirement is the party attempting to circumvent the privilege has to show the—that a fraud or a crime. And there is no dispute on that prong, that a crime occurred; namely, the two instances of perjury…And, here, the perjury happened, as I said, June 3rd, 2014, the answer to Interrogatory 22, and then September 4, 2014, when plaintiff was under oath at his deposition."); Tr. at 9:12-9:14 ("Here, defendants already know that the crime of perjury occurred because plaintiff admitted it."); Tr. at 11:4-11:6 ("And as we know, after having those discussions, [Plaintiff] actually got on the stand and admitted that he committed perjury."); Tr. at 14:14-14:23 ("The crime was committed when the plaintiff signed that interrogatory answer on June 3rd, 2014, under the statement that said: 'I, Daniel Taylor, verify that the responses to the foregoing plaintiff's response to defendant Anthony Villardita's interrogatories to plaintiff are true and correct, to the best of my knowledge, information and belief.' When he signed that, he knew that was a false statement because he knew the information was not true and correct."); Tr. at 15:10 ("We already know [Plaintiff] committed the crime.").

Perjury is itself bad enough but this perjury also contained serious additional aggravating circumstances in that: (1) it was motivated by a plaintiff placing his loyalty to a violent criminal organization over an oath to tell the truth in his own lawsuit; (2) involved implicit accusations of perjury against not only Defendants Berti and Glinski but members of the Cook County State's Attorney's Conviction Integrity Unit; (3) was disclosed in a fashion clearly designed to maximize the

surprise and prejudice to Defendants (i.e. at the very end of a six week trial on a related case); and (4) was disclosed without providing any notice to Defendants whatsoever.

Even worse, however, Plaintiff committed perjury *about his perjury* mere months ago. *See* Dckt. No. 358-7 at 2994:5-2996:23. Specifically, when initially asked about why he had lied at his deposition about the Berti/Glinski encounter, Plaintiff testified "I -- I couldn't remember at the time, but it came back to me." *Id.* It was only after Defendants' counsel pressed Plaintiff further on cross examination that Plaintiff was forced to admit that he did, in fact, know that his testimony was false at his deposition and intentionally lied anyway. *Id.* at 2999:24-3000:7, 3001:11-3001:22. Saying "I don't recall" when you do recall is not a "get out of jail free card." This is perjury all the same. As set forth in very stark terms by the Seventh Circuit in *United States v. Gage*, 183 F.3d 711, 716 (7th Cir. 1999):

> As a general matter, a [person] can perjure himself about the state or accuracy of his memory…Denying that you remember something when you do…can as easily impede the administration of justice as a simple lie about a material fact. A lie is a lie, whether explicit or implicit. *Id.*

Thus, Plaintiff committed perjury in March 2017 mere months ago in this very courthouse in the very same proceeding in which his perjury was discovered. This history makes pellucidly clear that Plaintiff has zero regard for the rules of this court or the law applicable to this proceeding. The circumstances of this perjury clearly indicate that Plaintiff will continue saying whatever false statements he can get away with. Unless this Court responds firmly, there is little doubt that this misconduct will continue. Relief that allows Plaintiff to continue to press his case cannot serve the interests of justice.

Under these circumstances, none of the remedies discussed below (i.e. partial judgment, exclusion of evidence, jury instruction/stipulated facts, monetary relief, etc.) fully address the gravity and the consequences of this perjury because non-dismissal relief still allows this Plaintiff to commit federal crimes of dishonesty on important issues in his own lawsuit yet still seek to proceed with a

lawsuit seeking money. Defendants already will be able to use Plaintiff's perjury against him at his trial. Thus, Plaintiff is likely no worse off as a result of any of these sanctions (with the possible exception of a --likely non-recoverable--bill for attorney's fees and costs).

The suggested sanctions of exclusion of evidence, partial judgment on claims directly implicating the subject of the perjury, and instructing the jury about the adverse inference from Plaintiff's perjury are simply not sufficient to impose any real consequence on Plaintiff or deter any further abuses of the judicial system (by Plaintiff or others). *See e.g. Brady*, 877 F.Supp. at 453 ("Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence is merely excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means."); *Malibu Media, LLC v. Tashiro*, 2015 WL 2371597, at *37 (S.D. Ind. 2015)("[A] sanction short of default would not appropriately address the goals of deterrence and punishment. An adverse inference, for instance, would help redress the prejudice that Plaintiff has suffered by, for example, requiring the jury to infer that Plaintiff's copyrighted works would have been found on the hard drive from which files were deleted. But such a sanction would allow the case to continue to trial and would thus allow Defendants to press their case to this Court. In light of their misconduct, Defendants should not be allowed to do so"); *White v. Lambert*, 2011 WL 691983, *8 (S.D. Ill. 2011)("Sanctioning Plaintiff by dismissing Counts 3 and 5, which without the forged documents fail on their own, is hardly a sanction….The only meaningful sanction likely to deter Plaintiff and other inmates from submitting forged documents is to dismiss all claims against all of the defendants, with prejudice.").

Frankly, partial remedies such as these would be complex, unwieldly and would, in fact, impose negative consequences on *Defendants* as a result of Plaintiff's perjury. For example, in order to fully explore the self-serving nature of this perjury, Defendants would have to delve into a complex procedural history of discovery and attempt to explain the significance of this to the jury. Even worse, however, Defendants will be given a Morton's Fork of equally unpleasant alternatives. Specifically, in order to prove that Plaintiff's eventual admission of his perjury in 2017 was not a product of conscience but, rather, the product of an intentional scheme to inflict further damage on these Defendants, Defendants would be required to delve into the significance of the *Patrick* trial and the claims made therein. For obvious reasons, no defendant desires to put on evidence before a trier of fact that indicates they have been sued by other individuals. Thus, this type of evidence is almost always excluded from a jury's consideration. *See Patterson v. City of Chicago*, 2017 WL 770991, at *3 (N.D. Ill. 2017)(barring other lawsuits against defendants as inadmissible under Fed. R. Evid. 403, 404, and 608)*; Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987). Thus, Defendants would be forced to either affirmatively introduce potentially harmful evidence on their own or simply forgo fully exploring the breadth of Plaintiff's perjury. Given that Plaintiff bears 100% responsibility for this situation, it would be highly inequitable to force Defendants into this choice of equally undesirable alternatives.

Nor would monetary sanctions be a fully appropriate sanction in this case. Given Plaintiff's financial status as disclosed in discovery, it appears highly unlikely that Plaintiff would be able to satisfy any such relief. *See Thomas v. GMAC*, 288 F.3d 305, 307 (7th Cir.2002)(noting that dismissal with prejudice appropriate where "monetary sanction would probably be difficult to collect"); *White*, 2011 WL 691983 at *8 (financial sanctions not sufficient to deter perjury from indigent litigant). Moreover, the Courts have been loath to impose only monetary sanctions to address perjury because such relief

sends the message that perjury is permissible so long as the perjurer is willing to write a check if caught.

As set forth by the Court in *Malibu Media, LLC*:

> [A] monetary sanction would help redress the prejudice [the opposing litigant] has suffered and would help punish the offenders, but it would not adequately protect the judiciary. Such a sanction would allow [the perjuring party] to continue to assert the protections of the judicial system against [the opposing party's] claim despite [the perjuring party's] continued abuse of that very system. Moreover, such a sanction would send a message that the Court is willing to accept perjury so long as parties are willing to write a check. This the Court will not do…" *Id.*, 2015 WL 2371597 at *37.

For all the above reasons, Defendants believe that dismissal remains the appropriate sanction under the facts of this case and governing law and the foregoing suggestions simply do not suffice.

## II. In The Event This Court Recommends Sanctions Short Of Complete Dismissal, The Relief Ordered Must Include Several Necessary Facets To Justly Meet The Gravity Of The Offense And Deter Similar Misconduct By Plaintiff And Other Litigants.

In the event this Court ultimately decides not to recommend dismissal of this suit in its entirety as a sanction in this case, Defendants suggest that the relief recommended by this Court fully meet the gravity and pervasiveness of the offenses committed, maintain the integrity of the judicial process, and firmly deter Plaintiff and other litigants who may attempt to profit from perjury. In this regard, subject to the reservations set forth in Part I *supra*, Defendants offer the following for this Court's consideration:

## A. Partial Judgment Should Be Entered On All Claims Asserted Against Defendants Berti And Glinski And Plaintiff's Fabrication Of Evidence Claim.

Any just sanction, at minimum, must also include the following relief: (1) Plaintiff's claims against Defendants Berti and Glinski must be dismissed in their entirety; and (2) judgment being entered against Plaintiff on his Fabrication of Evidence claim to the extent reliant upon the alleged fabrication of evidence relating to the encounter between Plaintiff and Defendants Berti and Glinski. Even if judgment is not entered in its totality, this Court retains the power to dismiss any part of

Plaintiff's claims. *See e.g.* Fed. R. Civ. P. 37(b)(2)(iii), (v)(court may enter order "striking pleadings in whole *or in part*" and "dismissing the action or proceeding in whole *or in part*"); *see also Craftwood Lumber Co. v. Interline Brands, Inc.*, 2013 WL 4598490, at *14 (N.D. Ill. 2013)(finding that the preclusion of defendant's two defenses and introduction of certain evidence was tailored to defendant's violation "because the main thrust of the outstanding discovery it refused to produce and repeatedly failed to substantively address" was related to those defenses); *Homevestors of Am., Inc. v. Homebuyers, L.L.C.*, 2009 WL 10694134, at *2 (N.D. Ind. 2009)(barring party from presenting any affirmative defenses and rejecting request that sanction simply be limited to "excluding any testimony or documents relating to such defenses which were not produced in the deposition.").

Unlike the claims against other Defendants, Plaintiff's claims against Defendants Berti and Glinski rely exclusively on the encounter of which Plaintiff repeatedly denied under oath occurred at all. Even under this Court's own reasoning regarding the factual severability of Plaintiff's perjury on this topic, no such severability exists regarding the claims against Defendants Berti and Glinski. Similarly, Plaintiff's Fabrication of Evidence claim must also be dismissed to the extent it relies on claims of falsification of the encounter at issue. Even under the most forgiving piecemeal standards, permitting the claims against these two individuals to proceed would be wholly unjust and would, in effect, impose no consequence whatsoever for Plaintiff's criminal misconduct in this case. Similarly, permitting Plaintiff to pursue a Fabrication of Evidence claim premised upon the fabrication of evidence upon which he was caught red-handed committing perjury would similarly impose no consequence for his criminal misconduct. Any sanction not including this relief at minimum would be wholly at odds with the jurisprudence set forth in Part I. *Id.* Thus, in the event this Court decides not to recommend dismissal in its entirety, this Court, at minimum, should dismiss all claims against Defendants Berti and Glinski as well as Plaintiff's Fabrication of Evidence claim to the extent reliant

upon the alleged fabrication of any evidence relating in any way to Plaintiff's encounter with Defendants Berti and Glinski.

**B.    Defendants' Version Of The Facts Regarding Every Aspect Of The Encounter Between Officers Berti and Glinski And Plaintiff Must Be Deemed Established And Not Subject To Dispute At Trial.**

In addition to the above, the absolute minimum sanction by the Court must also include an order stipulating to the accuracy of Defendants Berti and Glinski's account of their interaction with Plaintiff and barring any evidence to the contrary (including, but not limited to barring Plaintiff from admitting any evidence or suggesting in any way that such report is false, fabricated, or inaccurate or that the circumstances of its drafting were in any way suspicious or improper in any fashion). This order must include an order directing that Berti and Glinski's descriptions of the interaction itself are undisputed as well as the time in which this interaction occurred.

This exact type of sanction is expressly permitted under Rule 37 and is routinely entered by courts for far less egregious conduct than present in this case. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii)(listing as an example of a possible discovery sanction, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and "prohibiting the disobedient party from supporting or opposing designated claims."); *see also Davidson v. Evergreen Park Cmty. High Sch. Dist. 231*, 2016 WL 6892882, at *4 (N.D. Ill. 2016)(ordering that Plaintiff was barred from contesting subject matters related to discovery withheld from production); *Plata v. Eureka Locker, Inc.*, 2014 WL 12733868, at *3 (C.D. Ill. 2014)("In this particular case, this Court recommends that Plata should be sanctioned by being precluded from presenting evidence to support his claim that Eureka Locker discriminated against him and other Hispanic employees by denying them first aid kits and gloves."); *Price v. Wrencher*, 2014 WL 4269079,

at *3 (N.D. Ill. 2014)(finding that prohibiting the plaintiff from asserting or defending a claim was the appropriate sanction for her failure to comply with a court order compelling discovery); *Craftwood Lumber Co.*, 2013 WL 4598490 at *14 (finding that the preclusion of defendant's two defenses and introduction of certain evidence was tailored to defendant's violation "because the main thrust of the outstanding discovery it refused to produce and repeatedly failed to substantively address" was related to those defenses); *Oyebade v. Boston Sci. Corp.*, 2012 WL 4020971, at *15 (S.D. Ind. 2012)(S.D. Ind. 2012)(ordering as relief for discovery misconduct and apparent perjury that certain facts were deemed to be established and that sanctioned party was barred from introducing any evidence controverting opposing party's evidence on same topic)

This remedy was suggested in Defendants' opening brief as a potential remedy. *See* Dckt. No. 358 at 21. Plaintiff averred that this relief would be "effectively directing a verdict in the defendants' favor." *See* Dckt. No. 381-1 at 17. This would be irrelevant even if true insofar as the consequences of perjured testimony very frequently result in adverse consequences for the perjuring litigant. *See Ramirez*, 845 F.3d at 779 ("Even if the court decides to impose a lesser, issue-related sanction, such as excluding the testimony of a particular witness (see Rule 37(b)(2)(A)(ii)), the sanction may so hobble the sanctioned party that the result of the case is foreordained."); *Odeen v. Centro, Inc.*, 2014 WL 1245344, at *4 (C.D. Ill. 2014)("The Court concludes that the appropriate sanction here is to bar ODeen from using any evidence that would have been responsive to the outstanding discovery. This may have nearly the same practical effect as a dismissal because, at the time Centro's Motion to Compel was filed, ODeen had 'failed to provide any response to the [written] discovery [requests].'").

Indeed, the whole purpose of this type of relief is to prevent an offending party from contesting any aspects of a discrete event as a consequence for misconduct relating to such event. *See*

*Davidson*, 2016 WL 6892882, at *4 (barring Plaintiff from contesting entire issue of whether he was medically able to return to work based on failure to timely disclose medical records for such period); *Ari Officer v. Duran*, 2014 WL 51330, at *3 (N.D. Ill. 2014)(ordering as sanction for discovery misconduct that litigant could not contest falsity of statements); *Craftwood Lumber Co.*, 2013 WL 4598490, at *14 (barring litigant from introducing evidence regarding entire class of defenses because of misconduct); *Oyebade,* 2012 WL 4020971, at *15 (barring litigant from introducing any evidence regarding disputed factual event based on litigant's misconduct regarding evidence pertaining to this incident); *4SEMO.com, Inc. v. S. Illinois Storm Shelters, Inc.*, 2017 WL 875606, at *4 (S.D. Ill. Mar. 6, 2017)(ordering sanction of barring Defendant from admitting evidence regarding damages rather than just barring defendant from introducing evidence regarding part of damages directly relating to misconduct); *Apex Colors, Inc. v. Chemworld Int'l Ltd., Inc.*, 2017 WL 164336, at *2 (N.D. Ind. 2017)(barring party from introducing evidence disputing any aspect of damage theory because of discovery misconduct); *Homevestors of Am., Inc.*, 2009 WL 10694134 at *2. Thus, an offending litigant cannot be permitted to attempt to parse out favorable aspects of the same subject matter forming the basis for the underlying violation regardless of the unfavorable consequences of his own actions.

The fact that there are actual consequences for serious criminal misconduct does not mean that the consequences themselves are inappropriate. Indeed, the exact converse is true. Permitting a perjurer caught red-handed to pivot to another self-serving alternate reality on the very same topic on which he admitted intentionally lying would run afoul of the entire purpose for sanctioning this misconduct in the first place. Indeed, refusing to enter this sanction would effectively be no sanction at all because this alternate reality is already a matter of record in this case. As explained by another District Court in addressing a similar topic:

This sanction would do nothing more than place plaintiff in the position in which he would have been had he properly engaged in discovery. The documents themselves, which plaintiff and his counsel withheld for years, clearly establish the above-mentioned facts, and admitting these facts, in no way, serves to sanction plaintiff and his counsel for their egregious misconduct. If anything, such a sanction would serve to encourage litigants and counsel to take a chance and withhold potentially damaging evidence, knowing that the only repercussion would be that the facts that naturally flow from the withheld documents would have to be acknowledged if the discovery misconduct is uncovered. *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 513 (N.D. Ohio 2013).

Moreover, Plaintiff's suggestion that entering this relief would be tantamount to "effectively directing a verdict in the defendants' favor" is simply not true. Plaintiff, of course, was not arrested and prosecuted for assisting Defendants Berti and Glinski in a narcotics investigation involving Akia Phillips (a.k.a "Baby T); he was arrested and prosecuted for his role in the murder of two people. While Defendants suggest that the evidence shows that Plaintiff, in fact, was directly involved in the murders of Mr. Lassiter and Ms. Haugabook, the fact that Plaintiff encountered Officers Berti and Glinski on the street around 9:30 p.m. obviously does not necessarily mean that he is guilty of these murders. Indeed, the fact that Plaintiff encountered Officers Berti and Glinski on the street around 9:30 p.m. does not even directly inculpate Plaintiff in these murders at all. There were scores of people in this area at the same time who were not involved in these murders. Thus, even were Plaintiff's assertions about this relief "effectively directing a verdict in the defendants' favor" relevant in the first place, it simply does not hold up to any degree of factual scrutiny.

Frankly, this sanction is not particularly onerous in the first place. Specifically, Defendants Berti and Glinski's version of the events (including the time in which this encounter occurred) is not only supported by the testimony of Defendants Berti and Glinski but by *Akia Phillips himself*. Specifically, Mr. Phillips has sworn under oath on several occasions in this lawsuit (via both affidavit and deposition) that Plaintiff showed up at his girlfriend's house in the company of the police between 9:00-9:30 p.m. (and well before 10:00 p.m.) on the evening of the murders. *See* Ex. A (Affidavit of

Akia Phillips); Ex. B (excerpts of deposition of Akia Phillips). The only first-hand evidence that this account occurred in the way that Plaintiff claims comes from the testimony that Plaintiff himself pivoted to after being caught red-handed committing perjury in 2017. Every single other participant in this encounter says it happened as Defendants Berti and Glinski said (and at the time they said it happened). Accordingly, entering a sanction of barring Plaintiff from contesting these facts is necessary but not particularly onerous. However, insofar as this issue is the precise matter on which Plaintiff committed criminal perjury, no just sanction can omit this relief as a remedy and a direct analogue of Plaintiff's misconduct. Indeed, permitting Plaintiff to still pursue an alternate factual theory on the very subject matter of his perjury would effectively impose no consequence for perjury and would encourage similar misconduct from other litigants. This cannot be permitted to occur.

## C.     Jury Instruction/Stipulation.

During the Court hearing on January 26, this Court indicated that, while it had not decided precisely what sanctions to recommend, it was considering the possibility of a jury instruction addressing Plaintiff's commission of perjury. Tr. at 17:8-17:18. Accordingly, in the event this Court decides to recommend sanctions short of dismissal, Defendants offer the following for consideration by the Court under Fed. R. Civ. P. 37 and the inherent authority of this Court (subject to the reservations set forth in Part I *supra*):

First, while the rendering of a jury instruction/stipulation is specifically permissible as a remedy for discovery misconduct (*see* Fed. R. Civ. P. 37(b)(2)(A)(I)-(ii)), it is Defendants' position that a jury instruction/stipulation standing alone is simply not a sufficient remedy for the severe misconduct in this case. Specifically, as this Court itself recognized, Plaintiff's multiple instances of perjury are already a matter of record and will obviously be used to attack Plaintiff's general credibility before the trier of fact. Moreover, as this Court also already recognized, pursuant to the already

applicable pattern jury instructions, juries are already instructed that they make take inconsistent statements into account in determining the credibility of witnesses. *See* Tr. at 17:12-17:18; *see also* Sev. Cir. Patt. Jur. Instr. 1.14. Thus, any such instruction must be accompanied by the other relief articulated herein as well.

Second, in the event a jury instruction/stipulation is ordered as part of the sanction order in this case, this must be: (1) sufficiently specific to address the uniquely serious circumstances of this case; (2) provide the jury all of the relevant factual and procedural context for considering the significance and probative value of this perjury; (3) send a firm and unmistakable message to the jury about the seriousness and relevance of this conduct to Plaintiff's general credibility *beyond that* already addressed in Pattern Instruction 1.14; (4) expressly direct the jury that they may apply an adverse inference on Plaintiff's general credibility as a witness; and (5) negate any and all avenues of Plaintiff or his attorneys to attempt to offer explanations, justifications, or other mitigating evidence or arguments to attempt to neutralize or minimize this misconduct. To this end, Defendants suggest the following sample language as necessary parts of any possible jury instruction/stipulation:

> You have heard evidence in this case that Plaintiff Daniel Taylor intentionally lied under oath on several occasions prior to this trial commencing regarding his interaction with Officers Berti and Glinski on the evening of the Lassiter/Haugabook murders. It is undisputed that Plaintiff did, in fact, have an encounter with Officers Berti and Glinski on the night of the Lassiter/Haugabook murders in which Plaintiff volunteered to assist Officers Berti and Glinski in locating Akia Phillips in connection with a narcotics investigation occurring at the home of Andrea Phillips at 854 W Agatite.

> Plaintiff's intentional lies occurred in connection with a process called discovery in this case. When a party files a lawsuit against another party or parties, a trial before a jury does not occur immediately. Rather, the parties to this lawsuit (both Plaintiff and Defendants) are given an opportunity to request information about the claims and defense alleged in the lawsuit. This process is called discovery. The process of discovery may take several years depending on the complexity of the case.

> Two methods of discovery are pertinent to this case: depositions and interrogatories.

A deposition is a method of discovery where attorneys are permitted to directly ask an opposing party questions in person under oath. A court reporter is present for these questions and answers and provides a record of everything that is said.

Interrogatories are a method of discovery whereby one party sends written questions to another party and requests answers be provided under oath. Typically, interrogatory answers are typed out by a party's attorney based on information provided by the party himself to his attorney. The party himself must then review the answers and swear under oath that the answers provided are truthful.

A party is legally required to be truthful and honest in responding to questions in both depositions and interrogatories even if truthful answers will be harmful to his case. Intentionally lying under oath in responses to discovery is not only a violation of the rules of procedure for civil lawsuits but it is a federal criminal offense.

Plaintiff filed his lawsuit on February 3, 2014.

On June 3, 2014, Plaintiff answered Interrogatories under oath which required that he provide in detail a description of all of his activities and encounters on the night of the Lassiter/Haugabook murders. In response to this question, Plaintiff swore under oath that he had no encounter with Officers Berti and Glinski on the night of the murders. These answers were false and Plaintiff knew that these answers were false at the time he made them.

Plaintiff's answers to these Interrogatories were typed by Plaintiff's attorneys from information provided them by Plaintiff himself. Plaintiff then reviewed these answers and swore under oath that the answers were true. In addition to being verified under oath by Plaintiff to be true, these answers were also signed by Plaintiff's attorneys. Attorneys are not permitted under law or the ethical rules governing the legal profession to affix their signature to documents that they know or reasonably believe to contain false information. Thus, you must accept as true for the purposes of this trial that Plaintiff intentionally lied to his own attorneys in providing the information contained within these interrogatory answers and that his own attorneys reasonably believed his false answers to be truthful.

On September 4, 2014, Plaintiff sat for his deposition in this case. Prior to being asked any questions at this deposition, Plaintiff took an oath to tell the truth, the whole truth and nothing but the truth during the course of this deposition. Plaintiff understood this oath prior to answering any questions. During the course of this deposition, Plaintiff was asked questions by an attorney for the Defendants requiring Plaintiff to describe all of his activities and encounters on the evening of the Lassiter/Haugabook murders. Plaintiff again denied that he ever had any encounter with Officers Berti and Glinski on the evening of the Lassiter/Haugabook murders. These answers were false and Plaintiff knew these answers were false at the time he made them.

I have previously given you an instruction regarding your consideration of prior inconsistent statements of parties and witnesses. This instruction is different than that one. For the

purposes of Plaintiff's lies regarding his encounter with Officers Berti and Glinski on the evening of the Lassiter/Haugabook murders, you are instructed that this false testimony was not the product of an innocent error, a simple mistake of fact, a lapse in memory or recollection by Plaintiff, a misunderstanding, or any other innocent explanation. Rather, this false testimony was the product of a knowing and intentional decision by Plaintiff to deceive by providing false information under oath in connection with this lawsuit. You are instructed to take these intentional acts of deception in adversely weighing the credibility of Plaintiff's testimony in its entirety.

If you have heard any evidence or argument in this trial which attempts to provide any innocent explanation or justification (in whole or in part) for these intentional lies, you are specifically instructed to disregard any such explanations or justifications in their entirety. You are also specifically directed not to take into account any possible innocent explanation or justification for Plaintiff's intentional lies in rendering your verdict in this case.

**D.    Barring Any Evidence Or Argument By Plaintiff Designed To Neutralize Or Mitigate The Circumstances Of Plaintiff's Perjury.**

In addition to the above, Plaintiff and his attorneys must also be barred from introducing any evidence or argument attempting to further explain, minimize, justify, analogize or mitigate the circumstances of Plaintiff's perjury. This type of relief is expressly permitted under Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii) and is commonly ordered as a result of subject matter specific discovery misconduct far less serious than that at issue in this case. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii)(listing as an example of a possible discovery sanction, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and "prohibiting the disobedient party from supporting or opposing designated claims."); *see also Davidson*, 2016 WL 6892882 at *4; *Plata*, 2014 WL 12733868 at *3; *Price*, 2014 WL 4269079 at *3; *Craftwood Lumber Co.*, 2013 WL 4598490 at *14; *Oyebade*, 2012 WL 4020971 at *15.

To this end, it bears noting that Plaintiff's counsel have already begun the process of damage control by: (1) repeatedly lauding themselves for their three-year-late admission of Plaintiff's perjury by absurdly characterizing this as a product of moral character (rather, than the strategically timed attempt to prejudice Defendants in the *Patrick* trial that it so clearly was)(*see* Dckt. No. 381-1); and (2)

pursuing a transparent tactic of "the best defense is a good offense" by attempting to create a false equivalency between alleged inconsistent statements of defendants with Plaintiff's intentional and repeated perjury out of loyalty to a violent criminal organization (*see* Dckt. 407). This must not be permitted under any circumstances. Permitting this to occur would result in essentially no real consequence for Plaintiff's perjury and, indeed, would encourage similar criminal misconduct by other litigants.

Accordingly, in the event this Court decides to recommend sanctions short of dismissal, Defendants offer the following suggested remedies under Fed. R. Civ. P. 37 and the inherent authority of this Court (subject to the reservations set forth in Part I *supra*):

- Barring Plaintiff from introducing any evidence or argument providing further mitigating explanations regarding the circumstances of his perjury (i.e. arguing that Plaintiff should be commended for admitting his lies while Defendants refuse to admit theirs, invoking his incarceration or fragile emotional state as an explanation for his perjury, etc.);

- Barring Plaintiff from introducing any prior consistent statements whereby he admitted on previous occasions that he had indeed encountered Defendants Berti and Glinski on the evening of the Lassiter/Haugabook murders;

- Barring Plaintiff from offering any other explanation for his perjury other than the one provided at the *Patrick* trial, specifically, that he intentionally lied as a result of his placing his loyalty to the Travelling Vice Lord street gang over his duty to tell the truth under oath in his lawsuit;

- Entering dismissal with prejudice as a contingent consequences for violation of any of the above orders.

**E.    Additional Discovery And Monetary Relief for The Past And Future Consequences Of Plaintiff's Perjury.**

Finally, any sanction order must also include an assessment of reasonable attorney's fees and costs incurred as a result of the present proceedings (i.e. the attorney's fees and costs incurred in

briefing and prosecuting the present motion) as well the attorney's fees and costs incurred in conducting additional discovery arising from Plaintiff's perjury. *See* Fed. R. Civ. P. 37(b)(2)(C)("Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."); Fed. R. Civ. P. 26(g)(directing that every discovery response must be certified as correct and that "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."); *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017)(court may award monetary sanctions incurred by opposing party as a result of discovery misconduct).

As set forth above, monetary consequences for perjury are an imperfect remedy for perjury. However, any just sanction must at least attempt to make Defendants whole for the direct consequences resulting from Plaintiff's perjury. Thus, Defendants suggest that any sanction ordered in this case include: (1) an award of reasonable attorney's fees and costs (to be determined by a subsequent fee petition) for briefing all papers relating in any way to Plaintiff's perjury and preparing for and attending all court appearances relating in any way to Plaintiff's perjury; and (2) an order permitting Defendants to re-depose any such individuals relating to the subject matter of Plaintiff's perjury (including but not limited to Deon Patrick, Rodney Matthews, Lewis Gardner, Paul Phillips, Dennis Mixon, Akia Phillips, Andrea Phillips, Plaintiff, and any other current or former members of the Vice Lord organization disclosed in discovery) and an accompanying order that Plaintiff must pay for all reasonable attorney's fees and costs incurred by Defendants in conducting such discovery.

## **CONCLUSION**

It is difficult to overstate the gravity of the criminal misconduct committed by Plaintiff in this case. It was intentional, repeated, and driven by one of the most loathsome motives possible: subservience to the rules of a violent criminal organization over an oath to tell the truth in a federal proceeding. Its eventual revelation was only done out of a transparent strategic decision to prejudice Defendants in their defense of a lawsuit brought by one of Plaintiff's friends and prior criminal cohorts. After spending extensive time and energy attempting to suggest a panoply of relief appropriate to address this misconduct, Defendants still firmly believe that the only just relief to address this misconduct is dismissing this case in its entirety. Only this relief can truly remedy this grave misconduct. Only this relief will send a firm message to other litigants that the federal courts are not open to litigants who place their loyalties to criminal organizations over their oaths. Far less serious transgressions have resulted in such relief and it should be entered here as well. That said, Defendants submit for this Court's consideration the foregoing suggestions in the event this Court determines not to recommend such relief.

WHEREFORE, Defendants pray this Court dismiss Plaintiff's claims with prejudice and enter judgment in favor of Defendants pursuant to Fed. R. Civ. P. 37 and the inherent powers of this Court under Chambers v. NASCO, Inc., 111 S. Ct. 2123 (1991), award attorney's fees and costs, and for whatever other relief this Court deems fit.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:   s/Timothy P. Scahill

Steven B. Borkan

Timothy P. Scahill

BORKAN & SCAHILL, LTD.

20 South Clark Street, Suite 1700

Chicago, Illinois 60603