**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 737 |
| vs. | ) | |
| | ) | Hon. John Z. Lee |
| | ) | Hon. Sheila M. Finnegan |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF FILING OF THE MEMORANDUM OF LAW OF**
**MACARTHUR JUSTICE CENTER AND LOCKE E. BOWMAN**
**RESPONDING TO COURT'S JANUARY 29, 2018 ORDER**

Please take notice that the Roderick and Solange MacArthur Justice Center and Locke E.

Bowman, by their attorneys, Jenner & Block LLP, respectfully submit the following

Memorandum of Law Responding to Court's January 29, 2018 Order, attached hereto.

Dated: February 16, 2018                     Respectfully submitted,

                                             THE MACARTHUR JUSTICE CENTER

                                             By:  _/s/ Gabriel A. Fuentes_____
                                                     One of Its Attorneys

David J. Bradford
Gabriel A. Fuentes
Monika N. Kothari
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
312-222-9350

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DANIEL TAYLOR,                  )
                                       )
         Plaintiff,         )
                                         )    No. 14 C 737
     vs.                               )
                                         )    Hon. John Z. Lee
                                         )    Hon. Sheila M. Finnegan
CITY OF CHICAGO, et al.,      )
                                         )
         Defendants.     )

**MEMORANDUM OF LAW**
**OF MACARTHUR JUSTICE CENTER AND LOCKE E. BOWMAN**
**RESPONDING TO COURT'S JANUARY 29, 2018 ORDER**

The Roderick and Solange MacArthur Justice Center ("MacArthur Justice Center") and

Locke E. Bowman, by their attorneys, JENNER & BLOCK LLP, hereby file this Memorandum

of Law in Response to the Court's January 29, 2018 Order ("the Order"). The MacArthur Justice

Center and Mr. Bowman retained Jenner & Block LLP as counsel independent of Plaintiff's

counsel in this matter, for the purpose of addressing the Court's specific factual questions set forth

in the Order. The MacArthur Justice Center and Mr. Bowman also file this Memorandum to lay

to rest any question, to the extent any has been raised, about whether they adhered to all applicable

ethical rules and norms in their conduct in this matter.

## INTRODUCTION

The night of March 29, 2017 was the first time that Daniel Taylor ("Plaintiff") informed

his counsel, Mr. Bowman, that ███████████████████████████████████████████

███████████████. Upon learning this information on March 29, and knowing then that Plaintiff

was scheduled to testify on the following morning at trial in *Patrick v. City of Chicago*, *et al.*, No.

1

14 C 3658 (N.D. Ill.) ("*Patrick*" or "the *Patrick* matter"), Mr. Bowman complied fully with the applicable Illinois Rules of Professional Conduct, including Rules 3.3 and 1.6.

Mr. Bowman acted immediately to remonstrate confidentially with his client to ensure that on the following morning, March 30, Plaintiff would truthfully acknowledge that ███████ ███████████████████████████████. Plaintiff testified to the encounter on March 30 in the *Patrick* trial, under direct examination by plaintiff's counsel in *Patrick*, Stuart J. Chanen, who was present at the March 29 preparation session the night before. Meanwhile, in the above-captioned lawsuit, in which the same defense counsel were representing the same defendants, nothing was scheduled to occur between the night of March 29 and the morning of March 30.

Under these circumstances, no further disclosure, either to the Court or to defense counsel, was necessary under the rules, once Mr. Bowman acted on March 29 to ensure that any inaccurate deposition testimony Plaintiff gave earlier on the subject of the encounter with Berti and Glinski would be corrected promptly on March 30. While defense counsel in *Patrick* complained to Judge Ronald J. Guzman that they should have been told of changes in Plaintiff's story in the hours before he took the stand on March 30, the judge dismissed the idea that the *Patrick* defendants suffered any harm.

The MacArthur Justice Center and Mr. Bowman fully met their ethical obligations under Rule 3.3, which required them to try to correct earlier inaccurate aspects of Plaintiff's deposition testimony but not to take further efforts unless their remonstrative efforts failed. At the same time, under Rule 1.6, the MacArthur Justice Center and Mr. Bowman owed Plaintiff a duty of confidentiality. One of the permissible – indeed preferable – means for correcting the record, was to afford Mr. Taylor the opportunity to do so publicly and subject to cross-examination. Mr. Bowman's reasonable remedial steps to correct the earlier testimony did not fail, and his not having

undertaken further disclosures of attorney-client communications was consistent with the duty of confidentiality he owed his client under Rule 1.6.  In support of this submission, the MacArthur Justice Center has submitted declarations from Mr. Bowman as well as Mr. Chanen and retained professional responsibility expert, Mary Patricia Benz.

## FACTUAL BACKGROUND

Plaintiff's March 29 ███████████████████████████████ came after the discovery record in *Patrick* and in this matter contained varying statements by Plaintiff about whether the encounter had occurred.  In a June 3, 2014 answer to an interrogatory asking Plaintiff to identify everyone he encountered on November 16, 1992, Plaintiff did not mention the encounter with Officers Berti and Glinski.  Defendants' Motion for Sanctions and To Dismiss ("Sanctions Motion") (D.E. 358), Ex. 4, at 9-10. At Plaintiff's September 4, 2014 deposition, Plaintiff testified that his interrogatory answer was accurate and that he had not encountered police after his release and had not told anyone that he had.  Ex. A, Taylor Dep. Tr. 31-32, 193-95.  He denied having helped the two officers find Akia Phillips that night.  *Id*. at 200-01.  But he also was shown a July 2003 Cook County State's Attorney's Office ("CCSAO") investigative report stating that he told the CCSAO that after his release on the night of November 16, 1992, "the police ask[ed] him if he knew where Akia Phillips could be, he entered their unmarked Tactical car and showed them where Akia's girlfriend resided." *Id.*, Taylor Dep. Ex. 5. Despite having testified earlier in the deposition that he had never said such a thing to anyone, he reviewed the CCSAO report and said it was "pretty much" accurate, except for what he said was an inaccurate reference to a witness named Dennis Mixon.  *Id.*, Taylor Dep at 389-90.  Asked if anything else in the July 2003 CCSAO report struck him as incorrect, he said "[n]ot at this moment, no." *Id.* at 391.  In addition, during the deposition, defense counsel showed Taylor a June 2003

memorandum from his then-attorney Kathleen Zellner to an assistant state's attorney stating that "Taylor has informed us that after being picked up by officers Glinski and Berti in front of Andrea Phillips' house at approximately 10:30-10:40 p.m. and the officers dropped him off about 15-20 minutes later." *Id.*, Taylor Dep. Ex. 1. Accordingly, while Plaintiff in his deposition clearly denied that the encounter with Officers Berti and Glinski occurred, even in the same deposition he indicated that it had occurred. And at the time of the deposition, defense counsel already possessed the two separate 2003 documents (Plaintiff's then-attorney's memo to the CCSAO and the CCSAO's memo of its own interview with Plaintiff) in which Plaintiff was reported to have said that the encounter with Officers Berti and Glinski did occur.

Nearly two and a half years after Plaintiff's deposition, Plaintiff was scheduled to testify at the *Patrick* trial on March 30, 2017. On the night of March 29, during a privileged and confidential meeting among Plaintiff, Mr. Bowman, and Mr. Chanen, Plaintiff stated that ███ ███████████████████████████████████████████. Ex. B, Declaration of Locke E. Bowman ("Bowman Decl."), ¶ 4; Ex. C, Declaration of Stuart J. Chanen ("Chanen Decl."), ¶ 5. Mr. Bowman promptly instructed Plaintiff to ██████████████████ ███████████████████████████████████████████████ ████████████ Bowman Decl., ¶ 9. Both Messrs. Bowman and Chanen left that meeting with an understanding that Plaintiff would acknowledge the encounter on the stand in *Patrick* on March 30. Bowman Decl., ¶ 10; Chanen Decl., ¶ 5.

On March 30, 2017, Mr. Chanen elicited direct testimony from Plaintiff that he did encounter Officers Berti and Glinski on November 16, 1992, and Mr. Chanen also chose to impeach Plaintiff with his September 2014 deposition testimony. Chanen Decl. ¶ 7. Later that day, after Plaintiff's trial testimony, defense counsel in *Patrick* wanted to know when Mr. Chanen

learned of Plaintiff's anticipated trial testimony, and the following colloquy occurred before Judge Guzman:

| THE COURT: | There is your answer. *He learned last night.* |
| --- | --- |
| MR. BORKAN: | What? He learned last night. |
| THE COURT: | They learned last night. |
| MR. BORKAN: | And – |
| THE COURT: | *At the time he testified in his deposition, they did not know.* |
| MR. BORKAN: | No. They did not know. And I will take Mr. Chanen's word for that and [Mr. Chanen's co-counsel at Valorem] Mrs. Auerbach's word for that, certainly. However, he learned last night at 8:00 o'clock. There could have been a modification in the manner in which the examination was done by Mr. Taylor – by [defense counsel] Mr. Scahill of Mr. Taylor. Certainly upon learning that, Mr. Chanen could have, should have sent an e-mail. He could have done it this morning. He could at least have given us a heads-up and said, hey, guys, by the way I know he lied. He didn't. Now, at some point this issue is going to have to be taken up with Mr. Taylor and his lawyers in his case. But because he knew he lied almost three years ago with regard to that, if we had known that, our strategy with regard to the opening statement in this case would be different; our strategy with respect to the defense in the Taylor case would be different. |
| THE COURT: | I understand that, but let's not go far afield here. |
| MR. BORKAN: | Okay, |
| THE COURT: | *Since they didn't know until last night*, they could not possibly have told you in time for you to modify your opening statement or your overall strategy in the case – |
| MR. BORKAN: | Correct, but the cross-examination – |
| THE COURT: | The only thing you would have had is with respect to Mr. Scahill's specific cross-examination of this witness and with – well, let me put it this way: Mr. Scahill's cross-examination of this witness, with respect to prior inconsistent statements and all of the other things he has |

> brought out, has been more than thorough and, frankly, quite effective. And I think we're talking about adding a feather to the weight of his cross-examination with that information because he has certainly at least implied through many questions that this witness lied not only then, but on other statements he has made. If you can propose in writing to me some substance more than that where this knowledge would have been of great importance to Mr. Scahill, I'll reconsider. *But at this point, I don't see anything needs to be done.*

> MR. BORKAN:     Okay, The only thing that I –

> THE COURT:     Now, I'm not making any statements about what happens with respect to you, other attorneys in another case with respect to this witness. That's between you and them.

Ex. D, *Patrick* Trial Tr. at 3107-09 (emphasis added).

Currently pending in *Patrick* are the defendants' motions for new trial and to set aside the judgment in *Patrick*, and in neither of those motions is the testimony of Plaintiff, or the above suggestion defense counsel made to Judge Guzman on March 30, even mentioned. *Patrick*, No. 14 C 3658, (D.E. 403, 405).

In the above-captioned matter, fact discovery remained open until December 31, 2017 – some nine months after defense counsel in this case first learned of the false deposition testimony. *Taylor,* (D.E. 397).

The Court's January 29 Order called for additional briefing on appropriate sanctions short of dismissal, and directed Plaintiff's counsel to provide a declaration describing:

> (a) the date, time, and means by which counsel first learned that Plaintiff acknowledged he had an encounter with Officers Berti and Glinski after his release from the lockup on November 16, 1992;

> (b) the reasons Plaintiff's counsel did not notify defense counsel before Plaintiff testified in the *Patrick* trial that Plaintiff's prior discovery response and deposition testimony on this topic was not accurate;

> (c) whether any documents exist (including emails) generated on or about 3/30/2017 reflecting communications among counsel regarding whether, when or how defense

counsel should be notified of Plaintiff's acknowledgement of the encounter with Officers Berti and Glinski, including (for example) whether defense counsel should be informed prior to Plaintiff's testimony in the Patrick trial. If such documents exist, they shall be preserved.

1/29/18 Order (D.E. 426). In short, the answers in the Bowman Declaration to the Court's questions are as follows:

(a) As noted above, Plaintiff's counsel did not learn that Plaintiff would ███████ ██████████████████████████████████████████ until the night of March 29 during a privileged meeting with Messrs. Bowman and Chanen to prepare Plaintiff for his trial testimony in *Patrick* the next day. Bowman Decl., ¶ 4; Chanen Decl., ¶ 5.

(b) Mr. Bowman immediately remonstrated confidentially with his client, Plaintiff, and obtained Plaintiff's agreement to correct the earlier inaccurate deposition testimony the very next morning at the *Patrick* trial, and under the circumstances, he did not consider that he had any duty of further disclosure of his privileged communications with his client on March 29. Bowman Decl., ¶ 9.

(c) Plaintiff's counsel possess no documents from on or about March 30, 2017, regarding whether, when, and how to notify *Patrick* defense counsel of Plaintiff's anticipated trial testimony, located no such documents after a reasonable search, and disclose (out of an abundance of caution) the existence of one document not responsive to the Court's directive, namely Mr. Chanen's having sent the MacArthur Justice Center a copy of his common-interest privileged direct examination outline of Plaintiff on the morning of March 30. *Id.*, ¶¶ 13-15.

## DISCUSSION

The MacArthur Justice Center and its attorneys, in their representation of Plaintiff in this matter with respect to Plaintiff's privileged statements to counsel on March 29, 2017, and with respect to Plaintiff's trial testimony in *Patrick* the following morning, complied with all professional duties and obligations. Mr. Bowman immediately and confidentially remonstrated with his client and ensured that the very next morning, Plaintiff's inaccurate deposition testimony would be corrected. Then, on March 30, the testimony was corrected, in a manner reasonably necessary to rectify the earlier false statement and consistent with counsel's duties under the applicable Illinois Rules of Professional Conduct including Rules 3.3 and 1.6.

7

I.      **Under Rule 3.3, a Lawyer's First Step Upon Learning that a Client Previously Gave False Testimony Is To Remonstrate Confidentially with the Client To Correct the False Testimony.**

Rule 3.3 of the Illinois Rules of Professional Conduct provides that once a lawyer "comes to know of" the falsity of material evidence offered earlier in the proceeding, "the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Ill. R.P.C. 3.3(a)(3). Rule 3.3's commentary gives further guidance on what a lawyer should do when the lawyer subsequently learns that material evidence offered earlier is false:

> [I]f the lawyer knows of the falsity of testimony elicited from the client during a deposition, the lawyer must take reasonable remedial measures. In such situations, the advocate's proper course is to remonstrate with the client confidentially, advise the client of the lawyer's duty of candor to the tribunal and seek the client's cooperation with respect to the withdrawal or correction of the false statements or evidence. *If that fails*, the advocate must take further remedial action.

*Id.*, cmt. 10 (emphasis added). "There is universal agreement that the first step should be to urge the client to rectify the situation. . . ." Geoffrey C. Hazard, W. William Hodes, and Peter R. Jarvis, *The Law of Lawyering* § 32.19 (2017 supp.). The reasonableness of rectifying or correcting the earlier false deposition testimony, as a first step before any further required disclosure, is reinforced in comment 10 to Rule 3.3(a)(3), stating that "further remedial action" beyond rectifying or correcting the earlier testimony becomes necessary only "[i]f that fails." Ill. R.P.C. 3.3(a)(3), cmt. 10.

Rule 3.3's commentary is thus consistent with the American Bar Association's 1993 opinion on a lawyer's duty to correct a client's earlier false testimony under ABA Model Rule 3.3:

> It is important to note, however, that the Committee does not assert, nor should it be inferred from its analysis of Rule 3.3(a) in Opinion No. 87-353, that disclosure to the tribunal is the first and only appropriate remedial measure to be taken in situations arising under Rule 3.3(a)(4). As the Comment to Rule 3.3 makes clear, *the duties of loyalty and confidentiality owed to her client require a lawyer to explore options short of outright disclosure in order to rectify the situation.* Thus, the lawyer's first step should be to remonstrate with the client confidentially and

> urge him to rectify the situation. It may develop that, after consultation with the client, the lawyer will be in a position to accomplish rectification without divulging the client's wrongdoing or breaching the client's confidences, depending upon the rules of the jurisdiction and the nature of the false evidence.

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 93-376, "The Lawyer's Obligation Where the Client Lies in Response to Discovery Requests" (Aug 6, 1993) (emphasis added); *see also* Jeffrey S. Kinsler and Jay E. Grenig, 10 Ill. Prac. Civil Discovery § 24:41 (2d ed. July 2017) (noting that the ABA Committee, in issuing opinion 93-376, "stopped short of requiring disclosure to the court as the first and only appropriate remedial measure to be taken in situations arising under Model Rule 3.3. . . . The lawyer's first step should be to remonstrate with the client confidentially and urge the client to rectify the situation").

In this case, the first step Mr. Bowman took on the evening of March 29 was to remonstrate confidentially with his client and urge him to ███████████████████████████████ ████████████████████████████████████████████████████████████████████████ . This effort was effective: On the following morning, Plaintiff corrected the deposition testimony during the *Patrick* trial. On the face of Rule 3.3(a)(3), its commentary, and the authoritative views of the ABA and commentators including Hazard, Mr. Bowman's successful remonstrative effort sufficed to rectify the situation without any further disclosures to counsel or the tribunal. The MacArthur Justice Center's retained professional responsibility expert, Mary Patricia Benz, concurs. Ex. E, Mary Patricia Benz Declaration ("Benz Decl."), ¶¶ 9-20.

**II.     Mr. Bowman's Remonstrative Efforts, Without Further Disclosure, Fell Within the Range of "Reasonable Remedial Measures" To Correct Earlier False Testimony, and Within Mr. Bowman's Discretion To Respect Client Confidentiality Pursuant To Rule 1.6.**

The March 29, 2017 meeting, at which Plaintiff indicated to Messrs. Bowman and Chanen for the first time that he would state that ████████████████████████████████

9

was a confidential meeting understood by Messrs. Bowman and Chanen to be covered by the attorney-client privilege as well as a common-interest privilege. Bowman Decl., ¶ 5; Chanen Decl., ¶ 3. A lawyer must keep "information relating to the representation of a client" confidential. Ill. R.P.C. 1.6(a). Moreover, the lawyer may reveal such information only "to the extent the lawyer reasonably believes necessary" to accomplish any of a series of purposes specified under Rule 1.6, including to prevent a client from committing a fraud. Ill. R.P.C. 1.6(b). While required disclosure to a court under Rule 3.3 ordinarily trumps the lawyer's confidentiality obligations under Rule 1.6, the authorities also make clear that the lawyer has considerable discretion in determining the reasonableness of measures short of disclosure, and that such measures should not exceed what is necessary to rectify the problem.

The commentary to Rule 1.6 echoes the commentary to Rule 3.3 in this regard, stating that "the lawyer should first seek to persuade the client to take suitable action to obviate the need for disclosure." Ill. R.P.C. 1.6(b), cmt. 16. "In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose." *Id.*; *see also* Restatement (Third) of the Law Governing Lawyers § 120, cmt. h (2000) (considering reasonableness of the lawyer's remedial measures to include causing the client "minimal adverse effects. The lawyer has discretion as to which measures to adopt, so long as they are reasonably calculated to correct the false evidence."); *see also United States v. Williams*, 698 F.3d 374, 382 (7th Cir. 2012) ("Lawyers enjoy a broad discretion in responding to litigation misconduct by their clients. . . ."). In a 2013 advisory opinion addressing lawyers' duties upon discovering the earlier submission of false material evidence, the Illinois State Bar Association concurred that "[i]f disclosure to the tribunal is made, a lawyer must be cautious to tailor the disclosure so as to disclose only so much information as is necessary to satisfy the purpose of disclosure (e.g. preventing a

trier of fact from being misled)."  ISBA Professional Conduct Advisory Opinion No. 13-05 (May 2013).

In this case, Mr. Bowman knew that his March 29 meeting was privileged and confidential. Bowman Decl., ¶ 5.  He knew that once Plaintiff agreed to his instructions to ███████████ ████████████████████████████████████████████, the truth would come out on March 30, as it did come out.  *Id.* ¶¶ 9-10.  Under these circumstances, a greater level of disclosure adverse to his client, such as an email or a phone call to defense counsel in *Patrick* to convey the confidential details of Mr. Bowman's privileged communications with his client, simply was not necessary – or at least Mr. Bowman acted within his permissible discretion not to undertake such greater disclosure.  Benz Decl., ¶¶ 7, 13, 16, 19, 20.  Remonstrating immediately with Plaintiff on March 29 (in the same meeting in which Mr. Bowman learned that contrary to the deposition testimony, Plaintiff would ██████████████████████████████) to ensure that he would testify truthfully on March 30 was a wholly reasonable remedial measure directed at rectifying the deposition testimony.  *Id.* ¶ 7, 9, 19, 20.  Having obtained Plaintiff's agreement on March 29 to testify truthfully on March 30 about ████████████, Mr. Bowman had every reason to believe that his corrective effort would be successful, and that therefore no advance disclosure to defense counsel or the tribunal was required.  *Id.* ¶ 7, 13, 16, 19, 20.  Under all of the circumstances, Mr. Bowman cannot be said to have failed to comply with the Rules of Professional Conduct by not contacting defense counsel in *Patrick* between the hours of 8 p.m. on March 29 and the morning of March 30 when Plaintiff took the witness stand.  *Id.* ¶ 20.

Adding to the reasonableness of Mr. Bowman's actions here is the fact that Mr. Chanen was fully within his rights to impeach his own witness (the Plaintiff) on March 30 when Plaintiff took the stand and acknowledged having encountered the two officers.  *See* Chanen Decl., ¶ 7.

11

Federal Rule of Evidence 607 fully contemplates that "[a]ny party," even the party calling the witness, may impeach, and without any requirement of advance notice to the other party. Fed. R. Evid. 607. The rule contemplates that from time to time, a proponent or sponsor of certain testimony, on direct examination, may wish to front the issue of the witness having previously testified inconsistently. It therefore contemplates instances in which the prior inconsistent statements of a witness are placed before the fact-finder initially by the party calling the witness, without advance notice, and that therefore the adverse party will be put to responding or reacting, on cross-examination, to the witness's having made inconsistent statements. That is precisely what happened here, and defense counsel was not subjected to any greater disadvantage in *Patrick* by Mr. Chanen's presentation of Plaintiff's testimony in this manner. All Mr. Bowman needed to do here was correct the earlier false testimony, and he did so.

III.   **Defense Counsel in *Patrick* Sustained No Prejudice from Not Receiving Advance Notice of Plaintiff's Anticipated Testimony.**

The lack of prejudice to the defendants in *Patrick* underscores the reasonableness of Mr. Bowman's having ensured on March 29 that Plaintiff would testify truthfully the next morning. As reflected in the underlying facts as well as in Judge Guzman's comments on March 30, it was not unfair for the *Patrick* defense to have heard Plaintiff's March 30 trial testimony without advance notice of what it would be:

- Defense counsel in *Patrick* could hardly have been surprised to hear on March 30 that Plaintiff was acknowledging the encounter with Officers Berti and Glinski – as of his deposition in September 2014, the defense possessed the two 2003 documents indicating that he had acknowledged the encounter years earlier. In fact, the defense confronted Plaintiff in that deposition with the 2003 CCSAO report, and Plaintiff gave inconsistent answers during the deposition, even acknowledging its accuracy. The fact that Plaintiff at least had been alleged to have made inconsistent statements about the encounter, and had arguably admitted it already under oath at this deposition, was no secret to anyone involved in the *Patrick* case.

12

- Mr. Bowman learned that Plaintiff would ████████████████ ████████████████████████████████████ not during the deposition, not months before the *Patrick* trial, not weeks before, and not even days before, *but on the night before*. As Judge Guzman reasoned, hearing about Plaintiff's anticipated March 30 testimony on the night before or the morning of that testimony would have had no appreciable impact – no more than the weight of a feather, the judge said in open court – on the *Patrick* defendants' preparedness for trial or for Plaintiff's testimony.

- Judge Guzman, as the judge who presided over the *Patrick* trial, observed that defense counsel's cross-examination of Plaintiff was not just good, but was "more than thorough, and, frankly, quite effective." While Judge Guzman limited his remarks to the *Patrick* matter, his observations of that trial and of the impact of Plaintiff's trial testimony help illuminate the reasonableness ofr Mr. Bowman's actions to correct Plaintiff's testimony without providing counsel a "heads-up." There was no harm, and as the judge stated, "I don't see anything needs to be done." Judge Guzman's comment applies equally here as regards the professional conduct of Plaintiff's counsel.

- Defendants in *Patrick* have not taken up Judge Guzman on his suggestion that they add more substance, in a written submission, to their suggestion that they were harmed by not being told on March 29 or 30 of Plaintiff's anticipated March 30 testimony. Their post-trial motions make no mention of it.

The lack of any harm sustained by the defendants in either case, or by their counsel, further confirms the reasonableness of Mr. Bowman's efforts to correct Plaintiff's deposition testimony by ensuring his truthful testimony on March 30, without greater disclosure.

13

**CONCLUSION**

For the foregoing reasons, the Court ought to conclude that its questions concerning Mr. Bowman's actions in this matter, as set forth in the Court's January 29 Order, have been answered satisfactorily, and that no further inquiries need be made of Mr. Bowman or the MacArthur Justice Center as to professional responsibility issues arising from the events of March 29 and 30, 2017.

Dated: February 16, 2018             Respectfully submitted,

       THE MACARTHUR JUSTICE CENTER AND LOCKE E. BOWMAN

            By: _/s/ Gabriel A. Fuentes_____
                One of Its Attorneys

David J. Bradford
Gabriel A. Fuentes
Monika N. Kothari
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
312-222-9350

14

## <u>CERTIFICATE OF SERVICE</u>

I, Gabriel A. Fuentes, an attorney, hereby certify that on February 16, 2018, I caused the foregoing **Memorandum of Law of MacArthur Justice Center and Locke E. Bowman Responding to Court's January 29, 2018 Order** to be filed with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, using the ECF system, which will send notification of such filing to all current counsel of record.

s/ <em>Gabriel A. Fuentes</em>