IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 C 737 |
| v. ) | |
| ) | Judge John Z. Lee |
| CITY OF CHICAGO, CHICAGO POLICE ) | |
| OFFICERS ANTHONY VILLARDITA, ) | |
| THOMAS JOHNSON, BRIAN KILLACKY, ) | |
| TERRY O'CONNOR, RICK ABREU, ) | |
| ROBERT DELANEY, SEAN GLINSKI, ) | |
| MICHAEL BERTI, and UNIDENTIFIED ) | |
| EMPLOYEES OF THE CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Taylor spent more than 20 years in prison for two murders that he did not commit. He has now sued the City of Chicago and various individual police officers, alleging that they coerced him to give a false confession and concealed exculpatory evidence. Currently before the Court are the parties' objections [474] [475] to Magistrate Judge Finnegan's report and recommendation [462] proposing certain sanctions against Taylor. For the reasons stated herein, the Court overrules the parties' objections and adopts the report and recommendation in full.

**Background**[1]

Taylor was arrested on December 3, 1992 and charged with two murders that occurred at 910 W. Agatite Avenue in Chicago around 8:45 p.m. on November 16, 1992. R&R at 3. Police records show, however, that Taylor was in police custody at the time of the murders and was not released until after 10:00 p.m. that evening. *Id.* According to Taylor, Defendants discovered this

---
[1] The Court refers to the magistrate judge's report and recommendation, which sets forth the facts of this case in detail. *See* Report & Recommendation ("R&R"), ECF No. 462.

fact shortly after his arrest and then fabricated evidence to undermine the validity of his alibi. *Id.* Additionally, Taylor claims, Defendants coerced his confession and withheld exculpatory evidence. *Id.* at 3–4.

According to a transcript of a conversation between Taylor and a prosecutor shortly after his arrest, Taylor confessed to committing the murders with several other individuals. *Id.* at 4. Taylor allegedly stated that, after committing the crime, he hid the weapon and walked to 834 W. Agatite, where his acquaintance, Akia "Deon" Phillips, was staying. *Id.* Taylor remained there until the police raided the home later that evening. *Id.* When the police arrived, they asked Taylor to show them where Phillips was, and Taylor complied. *Id.* This version of events is largely reflected in a police report prepared by Officers Sean Glinski and Michael Berti on December 14, 1992. *Id.* at 5.

During a re-examination of the case in 2003, while Taylor was incarcerated, he provided an interview to the State's Attorney's Office ("SAO"). *Id.* at 6. According to a report of the interview, Taylor stated that, after being released from police lockup on November 16, 1992, he went to the area of Agatite and Hazel, where he encountered officers who asked him if he knew where Phillips was. *Id.* Taylor showed them where Phillips's girlfriend lived. *Id.*

Taylor initiated this lawsuit in 2014, alleging that Defendants "fabricated an encounter" with him on the street near the murder site on November 16, 1992, when in fact he was in police custody. *Id.* at 6–7. He responded to written discovery in this case on June 3, 2014. *Id.* at 7. In response to an interrogatory directing him to "[d]escribe in detail with specific references to time [his] movements and exact whereabouts" between 8:00 a.m. on November 15, 1992 and 8:00 a.m. on November 17, 1992 and to "identify each and every person [he] spoke to or otherwise interacted with during such period of time," Taylor did not mention any interaction with Berti and Glinski

2

on November 16, 1992. *Id.*. Instead, Taylor stated that he got into a fight around 6:00 p.m. that evening and was taken to the police lockup at Addison and Halsted. *Id.*. Then, he stated, he was released around 10:00 p.m. and went to 854 W. Agatite, where he sometimes stayed. *Id.* at 7–8. Upon arrival, he "realized that the Agatite house had been raided by the police." *Id.* at 8. He remained there until early in the morning of November 17. *Id.* When he left, a police officer picked him up and drove him to a shelter. *Id.*

At his deposition on September 4, 2014, Taylor reaffirmed the accuracy of his discovery responses and testified that he had not interacted with Berti or Glinski on November 16, 1992. *Id.*. When asked about the encounter described in the police report, Taylor unequivocally stated that no such encounter had occurred. *Id.* When Taylor was reminded about his interview with the SAO in 2003, he denied ever admitting that the encounter had occurred and reiterated that he had not met the officers on the night in question. *Id.* at 9–10. But then Taylor was given a summary of the interview with the SAO, which contradicted his account, *id.* at 10, and he stated that the summary was "pretty much" accurate. *Id.* at 10–11.

As discovery in this case continued, a jury trial was held in *Patrick v. City of Chicago*, No. 14 C 3658 (N.D. Ill.). *Id.* at 11. The plaintiff in that case, Deon Patrick, was one of the other individuals who had been wrongfully convicted of the November 16, 1992 murders. *Id.* at 1. Taylor testified at the trial on March 30, 2017. *Id.* at 11. On the stand, Taylor stated that he, in fact, *had* interacted with the police officers on the night of the murders. *Id.* at 11–12. Taylor was shown his deposition testimony from this case, and he admitted that he had been untruthful at his deposition because he "was ashamed that [he] took police officers to look for a friend." *Id.* at 12. On cross-examination, Taylor was asked whether he "intentionally lied under oath at [his] deposition." *Id.* Taylor responded, "Yes." *Id.*

3

Defendants filed a motion for sanctions on August 18, 2017, arguing that this case should be dismissed due to Taylor's dishonesty. *Id.* at 13. The motion was referred to Magistrate Judge Finnegan, who issued a report and recommendation on September 12, 2018. Magistrate Judge Finnegan declined to dismiss the case, but recommended sanctions against Taylor in the form of a jury instruction and an award of attorneys' fees related to the motion for sanctions. *Id.* at 37. Both sides filed objections to the report and recommendation under Federal Rule of Civil Procedure 72.

## **Legal Standard**

The imposition of sanctions is a dispositive matter for which a magistrate judge makes a recommendation that a district court reviews *de novo*. *See Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424, 431 (N.D. Ill. 2012). As the Seventh Circuit has explained:

> *De novo* review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge or a special master while still engaging in an independent decision-making process.

*Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013).

## **Analysis**

Both sides object to the magistrate judge's recommended sanctions. Defendants contend that the recommended sanctions are insufficient, and that the case should have been dismissed. Alternatively, they argue, the Court should adopt additional sanctions that were rejected by the magistrate judge. Taylor, on the other hand, contends that Defendants' motion should have been denied in its entirety.

I. **Dismissal as a Sanction**

Defendants argue that dismissal is the only appropriate sanction for Taylor's "repeated and intentional bouts of perjury committed . . . during discovery in this case relating to material issues." Defs.' R. 72 Obj. at 1–2, ECF No. 474. The magistrate judge rejected this sanction because she believed it was disproportionate to the gravity of Taylor's misconduct. The Court agrees.

The Seventh Circuit has recognized that dismissal may be an appropriate sanction in some cases, such as when a party has "shown a lack of respect for the court or proceedings," *White v. Williams*, 423 F. App'x 645, 647 (7th Cir. 2011), or upon a finding of "willfulness, bad faith, or fault," *Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003), *overruled on other grounds by Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772 (7th Cir. 2016). That said, while perjury in the course of discovery may warrant dismissal in some cases, *see, e.g., Jackson v. Murphy*, 468 F. App'x 616, 619–20 (7th Cir. 2012), dismissal is a "draconian" measure that should be "employed sparingly and only when there is a record of delay, contumacious conduct, or when other, less drastic sanctions prove unavailing," *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003). "Dismissing a case with prejudice is one of the harshest sanctions a court can impose, and so courts must be especially careful before taking that step." *Evans v. Griffin*, ___ F.3d ___, No. 17-1957, 2019 WL 3720917, at *5 (7th Cir. Aug. 7, 2019).

Here, there is no dispute that Taylor testified at the *Patrick* trial that he had deliberately lied in his deposition about his encounter with Berti and Glinski on the night of November 16, 1992. According to Defendants, this type of misconduct must be sanctioned by dismissal. But the cases upon which Defendants rely all involved conduct much more egregious than what occurred in this case. *See Ramirez*, 845 F.3d at 781–82 (affirming dismissal as a sanction where the plaintiff had engaged in witness tampering); *Jackson*, 468 F. App'x at 620 (affirming dismissal where the

5

plaintiff had forged a prison grievance and lied to the court, and the fraud was uncovered only after a "costly and contested" hearing); *Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 755, 759 (7th Cir. 2005) (affirming dismissal where the plaintiff had impersonated a colleague to obtain records, concealed the fraudulent activity, refused to stipulate to basic facts, and submitted multiple frivolous motions); *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002) (affirming dismissal where the plaintiff had lied on an application to proceed *in forma pauperis* in an attempt to "defraud the government"); *Ridge Chrysler Jeep, LLC v. Daimler Chrysler Servs. N. Am., LLC*, No. 03 C 760, 2006 WL 2808158, at *9 (N.D. Ill. Sept. 6, 2006) (dismissing case as a sanction where the plaintiffs' president and owner had failed to preserve or fabricated evidence, concealed and destroyed evidence, and made false statements resulting in the entry of a temporary restraining order); *Quela v. Payco-General Am. Creditas, Inc.*, No. 99 C 1904, 2000 WL 656681, at *1–2, *4–5 (N.D. Ill. May 18, 2000) (finding default judgment appropriate where the defendants had engaged in witness tampering, made false statements, and committed perjury).

By contrast, there is no evidence here that Taylor has tampered with witnesses or fabricated or concealed evidence. Nor does the record reflect that he has engaged in efforts to hinder the administration of this case by, for example, refusing to stipulate to basic facts or filing frivolous motions. Accordingly, although Taylor's dishonesty is certainly troubling, the Court is not persuaded that it warrants dismissal.

What is more, the Court agrees with Magistrate Judge Finnegan that this case "does not rise or fall on the truth of Taylor's assertion that he never had an encounter with Officers Berti and Glinski on the night of the murders." R&R at 22. That is because Taylor has consistently maintained that he was in police custody until 10:00 p.m. and that the officers lied about

encountering him at 9:30 p.m. That remains true regardless of whether, as Taylor now asserts, there actually *was* an encounter around 10:30 p.m., later than the time reflected in the police report.

In addition, the Court finds that the prejudice to Defendants from Taylor's lie is minimal. Although prejudice is not required for a court to dismiss a case as a sanction, *see Raziev v. Compass Truck Sales, LLC*, No. 13 C 737, 2016 WL 1449933, at *9 (N.D. Ill. Apr. 13, 2016), it is still an appropriate consideration prior to dismissal. *See Diettrich v. Nw. Airlines, Inc.*, 168 F.3d 961, 964–65 (7th Cir. 1999). Here, there is little prejudice to Defendants for several reasons.

For one thing, long before the *Patrick* trial, Defendants were aware that Taylor had given inconsistent accounts of what occurred on November 16, 1992. In June 2003, Taylor's attorney wrote a memo to the SAO, stating that Taylor had informed her that Glinski and Berti had picked him up around 10:30 p.m. that evening. *See* R&R at 5–6. And according to a report of Taylor's interview with the SAO in June 2003, he affirmed that he encountered police that evening and agreed to show them where Phillips was. *See id.* at 6. Yet Taylor failed to acknowledge this encounter in his discovery responses. During his deposition, however, he stated that the summary of the interview with the SAO was largely accurate. *See id.* at 17.

Additionally, Defendants argue that they have suffered prejudice in that they were deprived of the opportunity to depose members of the Vice Lord gang[2] to explore the organization's culture of loyalty and dishonesty. But this argument is not persuasive because, as Magistrate Judge Finnegan discussed, Defendants have known about the Vice Lords' alleged "code of silence" since long before Taylor's testimony at the *Patrick* trial. *See id.* at 25. And furthermore, there is nothing to suggest that, had Defendants deposed other gang members, they, too, would have admitted to lying. Accordingly, any prejudice claimed by Defendants is speculative at best.

---

[2]  According to Glinski's and Berti's report, Taylor was a member of the Vice Lords. *See* R&R at 5. Taylor states that he left the gang in 2007. *Id.* at 18.

7

Finally, Defendants have suffered minimal prejudice because this case has not yet proceeded to trial, and Defendants have not been precluded from making arguments to the jury about Taylor's prior untruthfulness. Accordingly, the Court agrees with the magistrate judge and finds that dismissal would be a disproportionate sanction.

## II. Sanctions Related to Claims Against Berti and Glinski

That being said, Defendants urge the Court to consider additional sanctions rejected by the magistrate judge. For one, Defendants argue that judgment should be entered in their favor on Taylor's claims against Berti and Glinski. Furthermore, they suggest that Taylor be precluded from arguing that Defendants fabricated evidence in the police report, or from challenging any aspect of his encounter with Berti and Glinski on the night of the murders. Like the magistrate judge, the Court finds Defendants' arguments unpersuasive.

As an initial matter, for the reasons discussed in Section I, the Court declines to dismiss Taylor's claims against Berti and Glinski. Dismissal is not a proportionate sanction here, where Taylor's claims do not rise or fall with the truth of his prior statement that he did not encounter the officers on the night of the murders, and Defendants have shown little prejudice from Taylor's untruthfulness.

The Court also finds that Defendants' proposed sanction of barring Taylor from denying that he had encountered Glinski and Berti at 9:30 p.m. on November 16 (and, therefore, precluding him from asserting that he was in police custody until 10:00 p.m. at evening) is not appropriate under the circumstances. Although he has made inconsistent statements about his movements on the evening of November 16, 1992, Taylor has consistently maintained that he was in police custody up until 10:00 p.m. It is only his account of whether he met Glinski and Berti after that point that has changed. "Perjury is a circumstance to be weighed by the jury in determining a

8

witness's credibility rather than a ground for removing the issue of credibility from the jury by treating the witness's entire testimony as unworthy of belief." *Allen v. Chi. Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003). Therefore, Defendants' request is denied.

### III. Exclusion of Neutralizing or Mitigating Evidence

Defendants also suggest that Taylor should be prohibited from offering evidence aimed at neutralizing or mitigating the circumstances of his perjury. Specifically, they seek to bar Taylor from: (1) introducing evidence or arguing that he should be commended for admitting the truth at the *Patrick* trial, or arguing that he initially lied because of his incarceration or his emotional state; (2) introducing any prior consistent statements in which he admitted to encountering Glinski and Berti on the night of the murders; or (3) offering any explanation for the perjury other than his loyalty to other gang members. *See* R&R at 32.

But decisions of this sort are best made in the context of the trial, and the parties may address these issues at that time. Furthermore, the jury will be tasked with deciding whether, and to what extent, Taylor's testimony is credible. To that end, his prior statements about the events of November 16, 1992, are highly relevant. Excluding evidence of *some* of Taylor's prior statements concerning the encounter with the officers, while allowing others, would unduly impede the ability of the jury to make this credibility determination.

### IV. Additional Discovery

Defendants also request leave to conduct additional discovery into the subject matter of Taylor's perjury. But fact discovery has been closed for some time, and, as noted above, Defendants knew prior to Taylor's testimony at the *Patrick* trial that (1) Taylor had given inconsistent statements about what happened the night of November 16, 1992, and (2) the Vice Lord organization had a "code of silence."

9

## V. Sanctions Against Taylor's Counsel

Although it is not specifically addressed in the parties' objections, the Court also agrees with the magistrate judge's recommendation not to impose sanctions against Taylor's counsel. As discussed in the report and recommendation, Taylor revealed his lies to counsel only the evening before he was to testify in the *Patrick* trial. *Id.* at 36. Because of the minimal time that passed between these events, the lack of any showing of bad faith, and the minimal prejudice to Defendants, the Court finds insufficient basis to impose sanctions on Taylor's counsel.

## VI. Jury Instruction

In addition, Defendants asked that the Court address Taylor's perjury with a jury instruction. Magistrate Judge Finnegan agreed that a jury instruction was an appropriate sanction in this case. But, because she found both sides' proposed instructions to be inadequate, the magistrate judge recommended that this Court adopt the following jury instruction:

> Under the Court's rules, the parties are required to exchange truthful information that is relevant to the case long before the trial. This is done by sending each other written questions (called interrogatories) and by asking verbal questions during depositions. Parties must answer these written and verbal questions truthfully since they are under oath. It is undisputed in this case that Plaintiff deliberately lied when responding to an interrogatory and when responding to questions at his deposition. Specifically, he denied that he had *any* encounter with Defendant Officers Berti and Glinski on the evening of the murders (November 16, 1992) when in fact he *did* have an encounter with those officers that night. You may consider these intentional lies by Plaintiff when deciding whether he is testifying truthfully at trial and what weight to give his testimony.

*Id.* at 31.

The Court concludes that a jury instruction is appropriate to address Taylor's admitted dishonesty in this case. That said, the Court agrees with the magistrate judge that Defendants' proposed instruction is excessive, and places greater emphasis on Taylor's lies than necessary, with the effect of telling the jury how the evidence should be weighed. The instruction, which

10

totals nearly two single-spaced pages, does not effectively convey to the jury what needs to be conveyed: that Taylor has testified to two different versions of events in this case, and has admitted that the version he relayed at his deposition was a lie.

On the other hand, Taylor's proposed solution is insufficient given the circumstances of this case. According to Taylor, the only appropriate jury instruction to give in this situation is Seventh Circuit Pattern Instruction 1.14. That instruction states that jurors may consider a party's prior inconsistent statements in deciding what weight to give his testimony. Taylor argues that this instruction is "the conventional and appropriate way to handle even admittedly untruthful statements." Pl.'s R. 72 Obj. at 10, ECF No. 475. But this instruction, as the magistrate judge noted, does not adequately address the unusual situation presented here. Because Taylor has admitted that his prior testimony was an intentional lie, and the jury is likely to be confronted with that lie, the Court concludes that an instruction that is more strongly worded than Pattern Instruction 1.14 is appropriate.

Taylor argues that the magistrate judge's instruction "remove[s] the issue of credibility from the jury." Pl.'s R. 72 Obj. at 11. But Taylor has unequivocally admitted that he lied during this deposition and in his discovery responses. As for the overall weight the jury is to give to his testimony at trial, the instruction states that jurors may consider these lies "when deciding whether he is testifying truthfully at trial and what weight to give his testimony." R&R at 31. This is consistent with the Seventh Circuit's statement that perjury is "a circumstance to be weighed by the jury in determining a witness's credibility[.]" *Allen*, 317 F.3d at 703.

Taylor also objects on the basis that Magistrate Judge Finnegan did not recommend a "corresponding instruction" as to Glinski, who Taylor contends "demonstrably lied under oath in this case." Pl.'s R. 72 Obj. at 11. At Taylor's 1995 criminal trial, Glinski testified as follows:

11

> Q: And I want to talk to you about the report that you filled out almost a month later [on December 14, 1992] regarding Daniel Taylor.
>
> A: Okay.
>
> Q: At that point you knew Mr. Taylor had claimed to have been in custody in the 23rd District the night of this murder, is that correct?
>
> [Objection overruled].
>
> Q: Okay. You knew that there was a bond slip showing that he bonded out after 10 o'clock, correct?
>
> A: I don't know if I was aware of that, sir. I know that he had stated that he was in the 23rd District, yes.

R&R at 27.

According to Taylor, this testimony constitutes an admission that, when Glinski prepared the police report, he knew that Taylor claimed to have been in lockup until 10:00 p.m. on the night of the murders. Taylor further points out that in 2003, Glinski told SAO investigators that he did not learn of Taylor's "lockup alibi" until after he prepared the report. *Id.* Thus, Taylor contends, Glinski has also committed perjury in this case.

The problem with this argument is that—as Magistrate Judge Finnegan pointed out—Taylor is the only person who has *admitted* to lying in this case. Although Taylor contends that Glinski also has committed perjury in the past, this is for a jury to decide in weighing his credibility at trial. Accordingly, the Court agrees with the magistrate judge's recommended jury instruction.

## VII. Attorneys' Fees

As to the issue of attorneys' fees, Magistrate Judge Finnegan concluded that Taylor should be required to reimburse Defendants for the fees and costs incurred in pursuing their motion for sanctions, even though he may be unable to pay. *Id.* at 33–34. Taylor objects to this recommendation on the basis that the magistrate judge "denied the vast majority of Defendants'

12

requested relief," and the relief they did obtain (a jury instruction) could have been obtained through ordinary pretrial proceedings. Pl.'s R. 72 Obj. at 12–14.

To be sure, the Seventh Circuit has held that in some cases, a prevailing party's entitlement to attorneys' fees may be affected by his "degree of success." *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 805 (7th Cir. 2004); *see also Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L.*, 102 F.3d 895, 907 (7th Cir. 1996) ("[W]hen a [party's] success is simply technical or *de minimis*, no fees may be awarded, even if the [party] has succeeded on an issue in the litigation and may thus be technically a 'prevailing party.'"). But Defendants' victory on their motion for sanctions was neither technical nor *de minimis*; on the contrary, the sanction of a negative jury instruction is a serious one. Although it may be less than Defendants had hoped for, that does not make it "so insignificant . . . as to be insufficient to support prevailing party status." *Farrar v. Hobby*, 506 U.S. 103, 113 (1992).

Alternatively, Taylor argues that Defendants should be entitled only to those fees that relate to the jury instruction itself. But the sole case cited by Taylor in support of this argument is inapposite. *See Assoc. of Bus. Process Mgmt. Prof'ls Int'l v. Brainstorm Grp., Inc.*, No. 13 C 6213, 2015 WL 5025342, at *3 (N.D. Ill. Aug. 24, 2015). In that case, the plaintiff was entitled to attorneys' fees for only "matters as to which it succeeded in proving up a breach" of the parties' settlement agreement, because the agreement provided for an award of attorneys' fees to the prevailing party only in the event of a breach. *Id.* Here, the award of attorneys' fees is not limited by contractual language; rather, it is a sanction for over a year of costly litigation that, Defendants rightly point out, was a "product of [Taylor's] own making," considering that it was his own admitted misconduct that prompted the motion for sanctions. Defs.' Resp. Pl.'s R. 72 Obj. at 9, ECF No. 480.

The remainder of Taylor's arguments concern whether the amount of fees to be awarded to Defendants is "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). But as Taylor acknowledges, he has not yet received an account of fees or costs from Defendants. Accordingly, this argument is premature. The Court cannot determine whether Defendants' fees are excessive without first knowing what those alleged fees are.

In sum, the Court agrees with Magistrate Judge Finnegan regarding the recommended sanction of attorneys' fees.

## Conclusion

For the reasons stated herein, the Court concludes that Magistrate Judge Finnegan's report and recommendation is well supported by the law and the facts of this case and overrules the parties' objections.

**IT IS SO ORDERED.**                                   **ENTERED: 9/23/19**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　　　　　　　　　　**JOHN Z. LEE**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**