**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 14 C 737<br><br>The Hon. John Z. Lee<br>Judge Presiding |

**<u>PLAINTIFF'S MOTION TO EXCLUDE DEFENSE EXPERT ERICH J. SPECKIN</u>**

Pursuant to Federal Rules of Evidence 702 and 403, and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), Plaintiff Daniel Taylor, by his undersigned attorneys, respectfully requests that this Court exclude the defense's proposed expert, Erich J. Speckin, from proffering an opinion in handwriting analysis at trial that he is not qualified to provide and that would unduly prejudice Plaintiff. In support, Plaintiff states:

## INTRODUCTION

Plaintiff Daniel Taylor has a watertight alibi for the double homicide of Jeffrey Lassiter and Sharon Haugabook, which occurred at 8:43 p.m. on November 16, 1992: he was in the Chicago Police Department's 23rd District lock-up on a disorderly conduct charge, from 7:30 p.m. until 10 p.m. that night. Twenty-third district lock-up records, withheld by the Defendant Officers at the time of his underlying criminal proceedings, prove Taylor's whereabouts on the night in question.

Now, Defendants intend to offer Erich J. Speckin, a purported expert in forensic document analysis, to testify that the bond slip with Taylor's signature that undeniably shows Taylor was in CPD custody during the murders was "probably not" signed by him. Speckin Report (Ex. A) at 3. Speckin's testimony gets at the heart of the jury's fact-finding role in this

case, which is to decide if Daniel Taylor was physically jailed in the 23rd District at the time of the murders on November 16. If the jury finds that he was (as the documentary and testimonial evidence in this case shows), then *it is physically impossible that Daniel Taylor committed the murders* and he is entirely innocent. Moreover, if Taylor was locked up at the time of the crime, the Defendants clearly committed constitutional misconduct, including coercing confessions from Taylor and seven others, falsely implicating him in the homicides.

Erich Speckin is unqualified to opine on the authenticity of Taylor's signature on the bond slip, and admission of this testimony would unduly prejudice Plaintiff at trial. Under Federal Rules of Evidence 702 and 403, he should be excluded from testifying.

## LEGAL STANDARD

This Court serves an important "gatekeeping" function under Federal Rule of Evidence 702 in determining whether an expert may opine at trial. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (Court must assess expert's "'evidentiary reliability'" by determining whether the expert's opinion has "'a reliable basis in the knowledge and experience of [the relevant] discipline.'") (citing *Daubert*, 509 U.S. at 589-90, 592) (alterations in original). To aid the Court, the party proposing an expert has the burden of showing the person is qualified as such, based on his "knowledge, skill, experience, training or education[.]" FED. R. EVID. 702. The proffering party must also establish that the expert's testimony "is reliable and would assist the trier of fact to understand the evidence or determine a fact at issue in a case." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing FED. R. EVID. 702 and *Daubert*, 509 U.S. at 589-91).

Judicial scrutiny of an expert's credentials helps to ensure the expert's reliability. *United States v. Vitek Supply Corp.*, 144 F.3d 476, 486 (7th Cir. 1998) ("an expert's qualifications bear upon the scientific validity of his testimony"). "Whether a witness is qualified as an expert can

only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citation and marks omitted). Accordingly, a proposed expert in forensic document analysis, like Speckin, may only testify where they are "well-qualified in analyzing questioned documents" so that the testimony "may be properly characterized as offering the jury knowledge beyond their own and enhancing their understanding of the evidence before them." *United States v. Jolivet*, 224 F.3d 902, 906 (8th Cir. 2000) (finding expert who studied and taught internationally, performed several thousand handwriting comparisons, wrote manuals and practiced in the field for over two decades was qualified) (citing *United States v. Paul*, 175 F.3d 906, 910-11 (11th Cir. 1999)).[1]

Further, Courts also consider whether the "probative value" of expert evidence is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (quoting FED. R. EVID. 403) (alterations in original). Where expert testimony would potentially mislead the jury, a judge may bar it from evidence, notwithstanding its potential relevance. *Cf. United States v. Redwood*, 216 F. Supp. 3d 890, 894 (N.D. Ill. 2016) ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403…exercises more control over experts than over lay witnesses.") (quoting *Daubert*, 509 U.S. at 595) (alterations in original).

[1] Plaintiff does not question that expert testimony regarding handwriting analysis can be admitted as both relevant and reliable, as numerous courts have found. *See Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 509 (7th Cir. 2003) ("Every circuit that has considered the issue has allowed expert testimony on handwriting analysis."); *White v. Richert*, No. 15 C 8185, 2019 WL 4062539, at *4 n. 4 (N.D. Ill. Aug. 28, 2019) (citing cases). Plaintiff proffers his own expert on handwriting analysis, Peter Speckin, discussed *infra*. But Speckin lacks the necessary qualifications to provide the testimony offered here.

## ARGUMENT

### I. The Defendants' Expert Should Be Barred as Unqualified Under Rule 702.

Under Fed. R. Evid. 702, Mr. Speckin lacks the necessary qualifications to provide a reliable opinion as to whether Taylor signed his own bond slip. *See Kumho Tire Co., Ltd.*, 526 U.S. at 149; *Vitek Supply Corp.*, 144 F.3d at 486; *see also United States v. Kladouris*, 964 F.2d 658, 670 (7th Cir. 1992) (affirming district court's ruling that a proffered witness's lack of training in chemistry prevented him from testifying as an expert on the significance of the presence of chemicals at the scene of a fire). Consequently, he serves less as expert than as mouthpiece for the defendants and will not assist the trier of fact. *See Padilla v. Hunter Douglas Window Coverings*, *Inc.*, 14 F. Supp. 3d 1127, 1134 (N.D. Ill. 2014) (excluding defense expert on window blind design whose experience was "general at best," and noting he had previously been similarly excluded where court found him to be a "quintessential expert for hire") (citing *Hayes v. MTD Prod.*, *Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007)); *see also Newton v. Roche Laboratories, Inc.*, 243 F. Supp. 2d 672, 678-79 (W.D. Tex. 2002) ("[An expert of dubious qualifications] more closely fits the profile of an 'expert for hire' whose opinions are more likely to be biased.").

Mr. Speckin does not have an advanced degree—or indeed any relevant degree—in forensic document analysis, the field that he purports to rely upon in this case.[2] Mr. Speckin

---

[2] Mr. Speckin is an ink dating specialist. *See* Speckin CV (Exhibit D). That is the area of expertise for which he is known within the broader field of questioned document examination. *See* Peter Smerick Dep. Tr. (attached as Ex. C) at 12:5-12 (…. "A. Our company is familiar with his firm. I'm a member of The Academy Group, a behavioral forensic science consulting firm in Manassas, Virginia. And if we have any cases involving ink dating matters, we have in the past referred our clients to [Speckin's] firm, but not for any handwriting analysis."). He is not qualified as a handwriting examiner and cannot shoe-horn such proficiency by reference to his qualifications in another field. Speckin Dep. Tr. (Ex. B) at 58:18-23 (only non-familial residency that Speckin completed was with Brunelle Forensic Labs on topics of ink identification and dating). *See Stuller v. United States (Estate of Stuller)*, 811 F.3d 890, 895, 896 (7th Cir. 2016) (expert with extensive experience in one field may lack the knowledge and experience necessary to testify in another field).

did not graduate from high school or receive a high school equivalency degree. Erich Speckin 05/22/18 Dep. Tr. (Ex. B) at 29:23-30:1-2, 30:8-17 ("So I went to high school. I dropped out[.]"). He did obtain a Bachelor of Arts from Michigan State, but he received no education in handwriting analysis, document examination, or forensic science as part of that degree. *Id*. at 31:12-32:2. He did not attend a graduate program in any of these fields. *Id*. at 31:17-32:2. *See Traharne v. Wayne Scott Fetzer Co.*, 156 F. Supp. 2d 717, 720-21 (N.D. Ill. 2001) (excluding proposed expert in manufacturing negligence suit due partly to his lack of credentials) ("Kaplan does not have any engineering design or physics degrees and has had no training in mechanical or electrical engineering. Kaplan, in fact, is not even a college graduate. He completed two years of general studies at the University of Illinois. Kaplan has not published or lectured on any subject involving sump pump design or safety. . . ."); *compare United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007) (proffered expert's "extensive academic qualifications and experience," including "a master's degree in Forensic Science, a certification in forensic document examination, and experience in over 700 document examinations," contributed to her qualifications as a forensic document analysis).

Mr. Speckin is also not qualified by virtue of any forensic science accreditation. Speckin does not currently hold, and has not previously held, any professional certifications in handwriting or questioned document analysis—for example, from ASTM International (which provides standards on handwriting analysis), a federal law enforcement agency like the FBI, or a specialized trade organization of forensic scientists (*e.g.,* the Questioned Document Section of the American Academy of Forensic Scientists or the American College of Forensic Examiners). Speckin Dep. Tr. at 59:19-24. *See American General Life and Acc. Ins. Co. v. Ward*, 530 F. Supp. 2d 1306, 1313 (N.D. Ga. 2008) (finding proffered handwriting expert's lack of any certification, particularly from the American Board of Forensic Document

Examiners ("ABFDE"), to be "significant" and excluding his testimony); *compare Paul*, 175 F.3d at 911 and *Wolf v. Ramsey*, 253 F. Supp. 2d 1323, 1344-45 (N.D. Ga. 2003) (both discussing importance of handwriting accreditations in expert qualifications, discussed *infra*). Speckin has not applied to be a member of any forensic science organization. *Id*. at 60:1-4.

Mr. Speckin's "on-the-job" training is likewise suspect. Speckin participated in a two-year residency ostensibly pertaining to the examination of questioned documents, which was overseen entirely by his father, Leonard A. Speckin. Speckin Dep. Tr. at 32:17-22. No other students participated in that residency while Speckin attended. *Id*. at 55:24-56:3. Erich Speckin is unaware of the existence of a syllabus relating to the residency, or documentation of any graduation requirements. Speckin Dep. Tr. at 54:9-16, 57:10-20. Speckin has no evidence or knowledge as to whether that residency program was certified by a handwriting organization. *Id*. at 58:9-11; *see also* Peter Smerick Dep. Tr. (attached as Ex. C) at 12:19-13:14 (expressing surprise at Speckin's training by his own father and indicating such an arrangement was unusual in the field). And while Speckin was supposedly a full-time resident with his father, he was simultaneously attending college at Michigan State, calling into question the number of residency hours he actually completed. Speckin Dep. Tr. at 34:6-16. After this "residency," Speckin conducted casework, which was again supervised by his father. *Id*. at 54:17-55:3. Speckin has not received any formal training on handwriting analysis from a certified lab or even by a lab not associated with his own family. Speckin Dep. Tr. at 34:21-24. He has also has never trained or instructed others on questioned document or handwriting analysis. *See* Speckin CV (attached as Ex. D); *compare Paul*, 175 F.3d at 911 (qualifying handwriting expert who was examiner for thirty years, was member of four professional handwriting analysis organizations, established "questioned document" laboratories for the Secret Service and Naval Investigative Services, and taught extensively

and provided training on handwriting analysis) *and Wolf*, 253 F. Supp. 2d at 1344-45 (finding document examiner expert to be qualified because, *inter alia,* expert was past president of American Society of Questioned Document Examiners, member of the American Board of Forensic Document Examiners, had completed the United States Army's two-year training program in Questioned Document Examination, and taught forensic document examination at several prominent schools). In short, Speckin's training is not sufficiently rigorous to ground a reliable opinion. *Cf. United States v. Carswell*, 922 F.2d 876, 879 (D.C. Cir. 1991) (Under 702, "the way in which the witness acquired the experience he claims as the basis of his expertise is significant in assessing whether he is likely to have acquired accurate and reliable knowledge.").

The inadequacy of Speckin's qualifications is highlighted by comparison to those of Plaintiff's expert, Peter Smerick, who has been a handwriting analyst for 35 years and completed a two-and-a-half-year training program with the FBI to become a certified questioned document examiner. Smerick Dep. Tr. at 22:15-21, 36:6-13, 40:10-41:13, 42:3-46:22, 50:5-51:8, 83:4-8. He thereafter become an instructor in forensic science at the FBI and for law enforcement professionals. *Id*. at 57:7-61:13. He is past president of and the primary handwriting expert with the Academy Group, a behavioral forensic science consulting firm, where he now serves as chairman of the board of directors. *Id*. at 12:5-8, 19:2-10, 25:10-27:12, 28:5-10; *see also* Smerick CV (attached as Ex. E). Smerick is also a full member of ASTM's forensic science branch, an affiliate member of the Questioned Document Section of the American Academy of Forensic Scientists (he was a full member until his retirement from the FBI), and a diplomat in the American College of Forensic Examiners. Smerick Dep. Tr. at 71:7-2, 74:5-75:4, 76:12-18.

While Defendants' expert need not have the exact qualifications of Smerick, Speckin's testimony must "draw[] on specialized 'knowledge, skill, experience, training or education.'"

*Traharne*, 156 F. Supp. 2d at 720 (citing *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999)). This is where Speckin falls short. Courts do not hesitate to exclude experts proffered in handwriting analysis where they lack the credentials expected in this field. *See Dracz v. American General Life Ins. Co.*, 426 F. Supp. 2d 1373, 1378-79 (M.D. Ga. 2006) (excluding handwriting expert whose qualifications were "clearly paltry" when compared with those of expert in *Paul*, where he was not certified by any document examiner organization, had never trained law enforcement officers, had never completed an extensive document examination training program with the government and had not taught forensic document examination in a recognized program for that discipline); *United States v. Bourgeois*, 950 F.2d 980, 986-87 (5th Cir. 1992) (upholding exclusion of handwriting expert who was not a member of certifying handwriting body and had no degree in handwriting analysis).

Underscoring the unreliability of Speckin's expert testimony is the fact that he has previously misrepresented his credentials in courts of law. He falsely passed himself off as eligible for certification by the American Board of Forensic Document Examiners (ABFDE), which warned Speckin via written correspondence to stop making false claims about his eligibility. *See E.E.O.C. v. Ethan Allen Inc.*, 259 F. Supp. 2d 625, 632 (N.D. Ohio 2003) (citing *In re Estate of Wang Teh Huei*, 2002 WL 1341762 (CFI), [2002] HKEC 1424, at ¶¶ 29.7, 29.29 (Hong Kong Special Administrative Region Ct. of First Instance) (Nov. 21, 2002) (*Wang Teh Hui* opinion attached as Ex. F)); *see also* ABFDE Letter to Erich J. Speckin (attached as Ex. G). When asked about his false claims during his deposition in this case, Speckin continued to maintain that he *was* eligible for certification; he also testified that the ABFDE letter had been motivated by the professional jealousy of ABFDE's president, and that he threw the letter away. Speckin Dep. Tr. at 73:2-75:6. Speckin has made these same assertions in the past, drawing the ire of a Hong Kong court considering his proffered

testimony. *See In re Estate of Wang Teh Huei*, 2002 WL 1341762, at ¶¶ 29.26 and 29.27.[3] Mr. Speckin has made other false claims that have been called into question by the judiciary. He stated in the *Wang Teh Huei* matter that he had conducted research with the United States Secret Service and the Internal Revenue Service, which the Court found "was simply untrue." *In re Estate of Wang Teh Huei*, 2002 WL 1341762, at ¶ 29.24. He admitted in this case that that representation was "misleading." Speckin Dep. Tr. at 76:3-77:9. He also stated in *Wang Teh Huei* that he was a member of the Questioned Document Section of the Midwestern Association of Forensic Scientists; the Court discovered from the president of that association that Speckin's claim was false. *In re Estate of Wang Teh Huei*, 2002 WL 1341762, at ¶ 29.29. Speckin affirmed in his *Taylor* deposition that he is not a member of any association and has never held any a certification "as it relates to forensics[.]" Speckin Dep. Tr. at 59:19-24.

An expert who misrepresents credentials directly relevant to his opinion is properly excluded from testifying. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 751 n. 8 (3d Cir. 2000) (court can assess expert witness's credibility under Rule 702 where expert's misrepresentations are directly related to methodology and expertise applied in case)[4]; (cited with approval by *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 48 (D.D.C. 2017)).

---

[3] The Court made detailed assertions about Speckin's integrity in this regard. It stated: "[Speckin] was brazen enough to imply that the letter written to him accusing him of inaccuracy or fraudulent misrepresentation was motivated by the President of the Board's professional jealousy. His failure to grasp why lawyers had made 'a big deal' out of the allegations of fraud says much about his indifference to attacks on his honesty." *In re Estate of Wang Teh Huei*, 2002 WL 1341762, at ¶ 29.26. The Court went on: "Perhaps the most illuminating aspect of all this is the manner in which [Speckin] dealt with the letter from the American Board of Document Examiners, Inc. He threw it away. His 'couldn't-care-less' attitude implied that the letter merited no acknowledgement, reply or explanation, exemplifies [Speckin's] cavalier attitude to the truth. No worse fate can befall a person who values and who trades on his integrity than to be accused of fraud. He however took it nonchalantly in his stride." *Id.* at ¶ 29.27.

[4] The *Elcock* Court's analysis of how it could use its gatekeeping role to bar expert misrepresentations pulled from Edward J. Imwinkelried*, Trial Judges—Gatekeepers or Usurpers? Can the Trial Judge Critically Assess the Admissibility of Expert Evidence Without Invading the Jury's Province to Evaluate the Credibility and Wight of the Testimony?* 84 MARQ. L. REV. 1, 39 (2000).

Because of his lack of credentials—and intentional misstatements about those credentials——Speckin should be barred pursuant to Fed. R. Evid. 702.

## II. Speckin Should Also Be Excluded Pursuant to Fed. R. Evid. 403, as the Risk of Unfair Prejudice from his Testimony Outweighs Any Probative Value.

Exclusion is also warranted under the general gatekeeping mechanism of Fed. R. Evid. 403. The fact that Speckin is unqualified exacerbates the risk that the jury will give undue consideration to his unfounded opinion, unfairly prejudicing Plaintiff in the process. *Cf. United States v. Pires*, 642 F.3d 1, 12 (5th Cir. 2011) (expert evidence "presents a special level of complexity in constructing the balance between probative value and unfairly prejudicial effect. . . . [which] arises out of the concern that, because of an expert's stature *qua* expert, jurors may assign more weight to expert testimony than it deserves.") (citing *United States v. Rodríguez–Berríos*, 573 F.3d 55, 72 (1st Cir. 2009)); *see also Carswell*, 922 F.2d at 879 ("[U]nder Rule 403, a district court may reasonably conclude that . . . some threshold level of expertise[] is necessary in order to justify devoting trial time to, and incurring other costs involved in, admitting relevant evidence").

That risk is particularly acute here, given that the evidence in the record (both documentary and testimonial) directly contradicts Speckin's conclusion about the provenance of Taylor's bond slip signature. *See* Pl's Stmt. of Add'l Mat. Facts in Opp. to Summary Judgment (Dkt. No. 496) at ¶¶ 49-58 (detailing the copious police records and witness testimony confirming Taylor's presence in the 23rd District lock-up at the time of the murders). In this context, the admission of Speckin's proposed testimony will lead to jury confusion, inducing each factfinder to "decide the case on an improper basis." *Thompson v. City of Chicago*, 472 F.3d 444, 455-56 (7th Cir. 2006) ("This court has explained that '[e]vidence is considered unfairly prejudicial . . . because its admission makes it likely that the jury will be induced to decide the case on an improper basis[.]") (citations omitted). Courts in the

Seventh Circuit have previously excluded experts on similar grounds. *See Redwood*, 216 F. Supp. 3d at 896-98 (excluding expert about general eyewitness identification and witness memory under Rule 403 where significant evidence in the record put the defendant at the scene, so that the expert testimony undermining that evidence would "create too high a risk of juror confusion"); *United States v. Bartlett*, 567 F.3d 901, 907 (7th Cir. 2009) ("We have remarked before that the scholarly findings about eyewitnesses have only limited application when multiple witnesses identify the same person.") (citations omitted)

## CONCLUSION

Speckin lacks sufficient credentials under Rule 702 to posit an opinion that flies in the face of all other evidence in this case, including evidence created by unnamed and disinterested members of the Chicago Police Department. His testimony is also far more prejudicial than probative, and he should also be excluded under Rule 403.

For all these reasons, Plaintiff respectfully requests that this Court exclude Defendants' proposed handwriting expert, Erich J. Speckin, from testifying as an expert witness at trial.

Respectfully submitted,

**DANIEL TAYLOR**

By: /s/ Alexa A. Van Brunt
*One of his attorneys*


Arthur Loevy
Jon Loevy
David B. Owens
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
(312) 243-590

Locke E. Bowman
Alexa A. Van Brunt
Maggie E. Filler
Vanessa del Valle
MACARTHUR JUSTICE CENTER
Northwestern Pritzker School of Law
375 E. Chicago Avenue
Chicago, Illinois 60611
(312) 503-1336

***Counsel for Plaintiff Daniel Taylor***

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on September 21, 2020, she caused the foregoing document to be served upon all counsel of record by filing the document using the Court's CM/ECF system, which automatically sent copies to all counsel of record.

/s/ Alexa Van Brunt