IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 737 |
| v. ) | |
| ) | Judge John Z. Lee |
| CITY OF CHICAGO, CHICAGO ) | |
| POLICE OFFICERS ANTHONY ) | |
| VILLARDITA, THOMAS JOHNSON, ) | |
| BRIAN KILLACKY, TERRY ) | |
| O'CONNOR, RICK ABREU, ROBERT ) | |
| DELANEY, SEAN GLINSKI, ) | |
| MICHAEL BERTI, and ) | |
| UNIDENTIFIED EMPLOYEES OF ) | |
| THE CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Taylor and six co-defendants were tried and convicted of a double homicide in 1995. More than twenty years later, Taylor was released from prison and received a certificate of innocence from the State of Illinois. Taylor and multiple co-defendants have sued the City of Chicago ("the City") and the Chicago police officers involved in the murder investigation, claiming that they were convicted of crimes they did not commit through knowingly coerced confessions and fabricated evidence. Based largely on the jury verdict reached in a case involving one of his co-defendants, Taylor seeks partial summary judgment against two of the Defendants in this case, Officers Sean Glinski and Michael Berti (collectively, "Defendants"). For the reasons given below, the motion is denied.

I.   **Background**[1]

A.   **Taylor and his co-defendants' criminal trials**

At approximately 8:43 p.m. on November 16, 1992, Jeffrey Lassiter and Sharon Haugabook were murdered in Lassiter's Chicago home. Pl.'s LR 56.1 Statement of Material Facts ("PSOF") ¶ 1, ECF No. 818. Chicago Police Department ("CPD") records indicate that Plaintiff Daniel Taylor was in police custody at that time on an unrelated issue. *Id.* ¶ 1. The records noted that he had been arrested at 6:45pm that day and released on bond at 10:00pm. *Id.* ¶ 11.

Taylor was arrested again by CPD officers on December 3, 1992. *Id.* ¶ 7. He and six co-defendants were subsequently charged with the Lassiter and Haugabook murders. *Id.* ¶ 9. Taylor and his co-defendants each made statements confessing to the murders. *Id.* ¶ 7. Five out of seven of these statements represented at least two things in common: Taylor was present at a 7:00 p.m. meeting on November 16, 1992, during which the Lassiter murder was planned; and Taylor actively participated in the murders at 8:43 p.m. *Id.* ¶ 8.

On December 6, 1992, the lead investigators on the case learned of the CPD records indicating that Taylor had been in custody at the time of the murders. *Id.* ¶11. Two days later, the investigators interviewed a witness, Adrian Grimes. Grimes told the detectives that he saw Taylor in the Clarendon Park Fieldhouse between 7:30 and 8:00 p.m. on the night of the murders. *Id.* ¶ 8.

---

[1]   The following facts are undisputed or deemed admitted, unless otherwise noted.

2

Defendant Officers Glinski and Berti prepared a report on December 14, 1992 ("the December 14 Report") indicating that they had encountered Taylor at approximately 9:30 p.m. on the night of the murders. *Id.* ¶ 17. This was thirty minutes before Taylor's bond slip indicated that he had been released from custody. *Id.* ¶ 11. The December 14 Report was not signed by a supervisor. *Id.* ¶ 17.

At his criminal trial, Taylor argued that he could not have committed the Lassiter and Haugabook murders, because he was in police custody at the time they occurred. *Id.* ¶ 18. Officer Glinski testified to the facts in the December 14 Report as a witness for the State. *Id.* ¶ 19.

Following trial, Taylor and his co-defendants were convicted and sentenced; Taylor was sentenced to life in prison. *Id.* ¶ 21; *See* Pl.'s LR 56.1 Statement of Additional Facts ("PSOAF"), Ex. 122, 1/23/14 Order Granting Certificate of Innocence, *People v. Taylor*, No. 93 CR 7106(04) (Cir. Ct. Cook Cty.) ("Certificate of Innocence"), ECF No. 500-21. More than twenty years later, however, his conviction was vacated, and the Circuit Court of Cook County granted him and three of the co-defendants certificates of innocence. *Id*. Taylor now claims that the confessions were coerced, and he and at least one other co-defendant allege that evidence against them was fabricated in violation of their constitutional rights. PSOF ¶ 10, 22.

**B.** *Patrick v. City of Chicago*

Deon Patrick, one of Taylor's co-defendants, brought suit against the City and the officers who investigated the murders. *See Patrick v. City of Chi.*, No. 14 C 3658 (N.D. Ill. filed May 19, 2014). Patrick's case went to trial on March 8, 2017. PSOF

3

¶ 22. Like Taylor, Patrick alleged that that his confession was coerced. He also testified that the officers responsible forced him to implicate Taylor as a co-conspirator in the murders. *Id.* ¶¶ 22, 24. He further alleged that, in order to bolster this coerced confession, Glinski and Berti authored the December 14 Report, falsely claiming that they had encountered Taylor at 9:30 p.m. on the night of the murders. *Id.* ¶ 24.

At trial, Patrick's attorneys argued that Defendants fabricated the December 14 Report as part of a conspiracy to cover up the false confessions. *Id.* ¶ 24. At the close of the evidence, Judge Guzman instructed the jury that a fabrication of evidence claim had three elements: (1) "[t]he Defendant [ ] knowingly fabricated false evidence or participated in fabricating false evidence," (2) "[t]hat evidence was used to deprive a Plaintiff of his liberty in some way," and (3) "[t]he fabricated evidence proximately caused the Plaintiff to be damaged." Jury Instructions at 32, *Patrick v. City of Chi.*, No. 14 C 3658 (N.D. Ill.) ("*Patrick* Jury Instructions"), ECF No. 369.

Based on these instructions, the jury in *Patrick* found Defendants liable for fabrication of evidence. PSOF ¶ 28. Defendants appealed the verdict, based in part on the jury instruction. *Id.* ¶ 29. Defendants argued that, in addition to finding that the officers had knowingly fabricated evidence, the jury should have been instructed that the fabricated evidence needed to be material and introduced against Patrick at his criminal trial. *See Patrick v. City of Chi.*, 974 F.3d 824, 835 (7th Cir. 2020). Although the Seventh Circuit agreed with Defendants that the jury instruction was incomplete, the panel affirmed the verdict, finding the error harmless because the

4

defendants also were found liable on other additional claims, "any of which [was] independently adequate to support the jury's damages award." *Id.* at 836.

## C. *Taylor v. City of Chicago*

Like Patrick, Taylor has brought suit against the City and the officers involved in his criminal conviction, raising numerous claims. *See* Am. Compl., ECF No. 478. As relevant here, Taylor alleges that Officers Glinski and Berti knowingly fabricated evidence when they drafted the December 14 Report, in violation of his rights under the Due Process Clause of the Fourteenth Amendment. *Id.* ¶¶ 72–78 ("Count II"); Defs.' LR 56.1 Statement of Additional Facts ("DSOF") ¶¶ 5–6, ECF No. 824. At this juncture, Taylor moves for partial summary judgment as to Count II, arguing that the jury verdict in *Patrick* conclusively determined that Defendants had knowingly fabricated the December 14 Report and that Defendants are collaterally estopped from arguing otherwise. *See* Pl.'s Mot. Part. Summ. J. ("Mot."), ECF No. 816. Taylor further contends that it is uncontested that: the December 14 Report was introduced against him at his criminal trial; the report was material to his conviction; and he has suffered injury, thus satisfying all the elements of Count II.

## II. <u>Legal Standard</u>

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move for summary judgment on all, less than all, or even part of a claim or defense. *Id.*

5

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forth with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019). To satisfy that ultimate burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

### III. Analysis

A due process fabrication of evidence claim has three elements: (1) the defendant knowingly fabricated evidence that was introduced against the plaintiff at his criminal trial, (2) the evidence was material, and (3) the plaintiff was damaged as a result. Federal Civil Jury Instructions of the Seventh Circuit § 7.14 (2017 rev.); *see also Patrick*, 974 F.3d at 835.

Taylor's position is two-fold. First, he invokes the doctrine of collateral estoppel,[2] arguing that the jury verdict in *Patrick* and its subsequent affirmance by the Seventh Circuit precludes Defendants from arguing that they did not knowingly

---

[2] Collateral estoppel is also called issue preclusion. This opinion will use the terms interchangeably.

6

fabricate evidence when they prepared the December 14 Report. Second, Taylor argues, the remaining elements of his due process fabrication of evidence claim—that the December 14 Report was used against Taylor at his trial, that it was material, and that he was damaged as a result—are undisputed on the record before the Court. The Court takes each element in turn.

## A.   Collateral Estoppel as to the December 14 Report

"Under the doctrine of issue preclusion, 'a prior judgment . . . foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'" *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (cleaned up). For a prior judgment to have issue preclusive effect, four elements must be met: "(1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014).[3]

Here, the parties agree that the first element has been met—the question of whether the December 14 Report constitutes fabricated evidence is the same issue litigated in *Patrick*. They also agree that the fourth element has been satisfied—

---

[3]   In the past, courts also required a showing of mutuality; that is, both the party invoking issue preclusion and the party against whom it is being invoked (or their privities) must have been bound by the judgment in the prior case. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). However, in this day and age, the federal courts do not strictly require mutuality for collateral estoppel to apply. *Id.* at 331.

Glinski and Berti were represented *Patrick*. PSOF ¶ 23. They disagree, however, on the second and third elements.

### 1. Whether the issue was fully and fairly litigated

Issue preclusion cannot apply to a previously litigated issue unless the party against whom issue preclusion is invoked had a full and fair opportunity to litigate the issue in the prior proceeding. As the Seventh Circuit has recognized, "a full and fair opportunity to litigate includes the right to appeal an adverse decision." *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989). The right to appeal includes the opportunity to be heard on the merits by the appellate court. *See id.* at 404 (collateral estoppel could not apply to previously dismissed constitutional claims where the prior court of appeals explicitly declined to reach the merits of the claims in affirming their dismissal) (citing *Gray v. Cty. of Dane*, 854 F.2d 179 (7th Cir. 1988)). Put differently, in order for an issue to have been fully litigated to trigger issue preclusion, it must have been litigated on the merits at the trial level with an opportunity to be heard on the merits of the issue on appeal.

Defendants had a full and fair opportunity during the *Patrick* trial to litigate on the merits the issue of whether the December 14 Report was fabricated. From his opening statements, Patrick made clear that his claim of fabrication of evidence against Glinski and Berti was predicated on the December 14 Report. PSOF ¶ 24. Furthermore, Glinski was examined on the report, and both parties addressed the report, as well as its truthfulness, in their closing arguments. *Id.* ¶¶ 24–25.

8

There was also a full opportunity to litigate the matter on appeal. Indeed, the Seventh Circuit reached the merits of all three arguments raised by Defendants in affirming the verdict. *See Patrick*, 974 F.3d at 831–36.

Despite this, Defendants argue that *Gray* controls and that issue preclusion cannot apply to the jury's factual determinations surrounding the December 14 Report, because the Seventh Circuit found the jury instruction on Patrick's fabrication of evidence claim to be erroneous. *Id.* at 835–36. This reliance on *Gray* is misplaced. In *Gray*, the plaintiff "tried to appeal the district court's ruling" that she failed to state a First or Fourteenth Amendment claim, but the appellate court "affirmed the district court on other grounds and expressly declined to reach those issues." 885 F.3d at 406–07. Thus, "for reasons beyond her control," the plaintiff "was not afforded a full and fair opportunity to litigate those [merits] issues" on appeal. *Id.* at 407. Here, by contrast, Defendants had the opportunity to appeal the jury's finding in the *Patrick* trial that they had fabricated evidence, but elected not to do so, focusing instead solely on the jury instruction. In *Gray*, the plaintiff did appeal the issue in question, but the appellate court declined to consider it. The rule in *Gray* avoids the unfairness of precluding the plaintiff from relitigating the issue in such a context. As a result, here, Defendants had a full and fair opportunity to litigate this issue through appeal.

### 2. Whether the issue was finally and necessarily decided

The next element of issue preclusion asks whether the determination that Defendants fabricated the December 14 Report was essential to the final judgment

9

in *Patrick*—in other words, whether the issue was both finally and necessarily decided by the *Patrick* jury.[4]

"Collateral estoppel applies to factual inferences that necessarily flow from a general verdict." *Williamson v. Ortiz*, No. 18 C 2028, 2020 WL 7013970, *11 (N.D. Ill. Nov. 28, 2020). For the inference to have been necessary, "a rational jury *must* have made such findings en route to its general verdict. If there was another path for the jury to reach the same conclusion, then collateral estoppel does not apply." *Id.* Thus, contrary to Defendants' view, a special interrogatory is not required. Rather, the Court can use context to establish what the jury must have found in reaching its verdict. *See, e.g.*, *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978) (reading a jury verdict "[u]nder the evidence and the instructions, and as the case was argued" to determine the issues to which collateral estoppel could apply); *Kluppelberg v. Burge*, 276 F. Supp. 3d 773, 777 (N.D. Ill. 2017) ("With respect to the jury's *Monell* finding, there is no other policy or practice that would have supported the verdict, because all the *Monell* evidence and argument related to CPD's use of street files.").

Taken together, the jury verdict, evidence, and trial transcript demonstrate that in finding for Patrick on the fabrication of evidence claims, the *Patrick* jury must have found that Defendants knowingly falsified the December 14 Report. First, the

---

[4] Citing the rule that the elements of a vacated judgment are not finally decided for the purposes of collateral estoppel, *see Pontarelli Limousine, Inc. v. City of Chicago*, 929 F.2d 339, 340 (7th Cir. 1991), Defendants contend at the outset that the jury's findings as to their fabrication of evidence do not constitute a final judgment. But as the Court has explained, the jury's verdict in *Patrick* was affirmed on appeal, and the Court's finding of harmless error did not disturb the jury's finding that they fabricated the December 14 Report.

10

instructions provided to the jury made clear that Defendants could only be found liable for fabrication of evidence if they "knowingly fabricated false evidence or participated in fabricating false evidence." *Patrick* Jury Instructions at 32. What is more, the sole piece of evidence that Patrick contended the Defendants had fabricated was the December 14 Report. *See* PSOF, Ex. 39, 3/8/17, Tr., *Patrick v. City of Chi.*, No. 14 C 3658 (N.D. Ill.), ECF No. 818-39 at 33:14–34:11 (Patrick's attorneys explicitly referring to the December 14 Report as a "fabricated . . . piece of evidence" and attributing it to "the last two defendants in this case, officers Michael Berti and Sean Glinski"); *Id*. at 615:9–635:25 (direct examination of Officer Villardita about contacting Berti and Glinski to have the December 14 Report made and questioning its lack of supervisor signature); *Id*. at 3495:10–3515:22 (direct examination of Officer Glinski about the drafting of the December 14 Report); *Id*. at 3707:5–3708:21 direct (examination in which Officer Berti is asked to explicitly deny fabricating the December 14 Report in order to frame Patrick and his co-defendants); *Id*. at 3711:17–3713:16 (cross examination of Officer Berti in which he is asked about the accuracy of the time he saw Taylor in the December 14 Report); *Id*. at 4061:11–4063:22 (Plaintiff's closing argument in which Patrick's attorneys explicitly argue that Defendants' fabrication of evidence was the December 14 Report); 4095:5–23 (Defendants' closing argument in which their attorneys argue that the December 14 Report is accurate). In light of the theories put forward in the opening and closing statements, along with the emphasis on the December 14 Report in the examinations

11

of Defendants, a rational jury could only have been referring to the December 14 Report in finding the Defendants liable for fabrication of evidence.

Defendants contend otherwise, maintaining that they had other involvement with Patrick that could have formed the basis of the jury's verdict finding them liable for fabrication of evidence. But Defendants themselves conceded in their appeal in *Patrick* that their "*sole involvement* [in Deon Patrick's case] was on December 14, 1992, when they authored the [December 14 Report] documenting their encounter with Taylor." Appellant's Br. at 58, *Patrick v. City of Chi.*, No. 18-2759 (7th Cir. filed Aug. 14, 2018) (emphasis added). And, indeed, the trial transcript from *Patrick* bears out that concession. Defendants cannot have their cake and eat it too.

### 3. Whether it is fair to apply issue preclusion

To be clear, what Plaintiff seeks to do here is preclude Glinski and Berti from contesting the *Patrick* jury's finding that they fabricated the December 14 Report. In so doing, Taylor seeks to avail himself of offensive nonmutual issue preclusion (offensive, because Taylor wants to establish a fact necessary to prove his claim; and nonmutual, because Taylor was not a litigant in *Patrick*).

It is well-established that, even where all of the elements of issue preclusion are proven, "[n]onmutual issue preclusion is not available as a matter of right." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4465 (3d ed. 2017); *see Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 772 (1st Cir. 2010); *Chicago Truck Drivers, Helpers & Warehouse Union Pension Fund v. Century Motor Freight*, 125 F.3d 526, 530–31 (7th Cir. 1997). For example,

12

the application of issue preclusion may not be appropriate when "the need to try related issues requires consideration of much the same evidence as bears on the issue tendered for preclusion . . . because it would not significantly expedite the second trial." *Federal Practice & Procedure* § 4465 (citing cases). *See also Setter v. A.H. Robins Co.*, 748 F.2d 1328, 1331 (8th Cir. 1984) (affirming a denial of nonmutual offensive issue preclusion because judicial economy is not furthered where "the same facts . . . would still have to come in and be considered by the court or jury [in the second trial].") Or when preclusion on one issue would "substantially distort decision of the issues that remain open." *Federal Practice & Procedure* § 4465 (citing cases). *Butler v. Stover Bros. Trucking Co.*, 546 F.2d 544, 551 (7th Cir. 1977) (finding that the collateral estoppel analysis must determine fairness in light of "the practical realities which surround the parties" and ultimately holding that collateral estoppel should not apply because it would be "unfair to allow plaintiff to assume a position better than that which he would have enjoyed . . ."). *See also* Restatement (Second) of Judgments at § 29(6) (denial of collateral estoppel may also be appropriate where "[t]reating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto").

Indeed, numerous courts have declined to apply issue preclusion when doing so would result in substantial prejudice to co-defendants or confuse the jury. *See, e.g., Rodriguez-Garcia*, 610 F.3d at 773 (affirming a district court's decision not to apply collateral estoppel because it "could lead the jury to make improper inferences as to related issues remaining in the case" and "the instruction would not promote

13

judicial economy because these remaining, closely intertwined issues would require introduction of much of the same evidence at trial"); *Whelan v. Abell*, 953 F.2d 663, 669 (D.C. Cir. 1992) (affirming a denial of nonmutual collateral estoppel based on "concern[s] about unduly swaying or confusing the jury"); *In re Blue Cross Blue Shield Antitrust Litig.* (MDL No. 2406), No. 2:13-CV-20000-RDP, 2018 WL 1796257, at *4 (N.D. Ala. Apr. 16, 2018) ("Here, the court concludes that applying nonmutual collateral estoppel is unwarranted [in part because] doing so would greatly prejudice the interests of the Defendants . . . who did not participate in" the cases that would have preclusive effect); *AIG Ret. Servs., Inc. v. Altus Fin. S.A.*, No. CV 05-1035-JFW (CWX), 2011 WL 13213602, at *6 (C.D. Cal. July 21, 2011) ("Because Artemis was the only defendant found liable in the Garamendi action, . . . [only] Artemis would be prohibited from arguing that it joined a conspiracy in this case while the other defendants would be presenting evidence and vigorously arguing that the conspiracy Artemis allegedly joined never existed, which would result in juror confusion even with appropriate limiting instructions.").

Here, Defendants argue that "conducting a trial where only *some defendants* would be bound on *some facts* while others would be free to contest the same issues would be impossible to fairly adjudicate." Defs.' Resp. Opp'n Mot. ("Defs.' Resp.") at 14, ECF No. 823. They rely on Judge Pallmeyer's reasoning in denying a similar motion, also based on the *Patrick* verdict, in *Phillips v. City of Chicago*. *See* 5/9/18 Tr., *Phillips v. City of Chi.*, No. 14 C 9372 (N.D. Ill.), ECF No. 170. Defendants' concerns are legitimate.

14

Although applying the doctrine of collateral estoppel in this instance would bind only two Defendants on only one claim, it would cause significant complications for other Defendants that would persist throughout the trial. For example, under Plaintiff's theory of the case, Defendants Villardita and Johnson would be forced to persuade the jury that the December 14 Report was not fabricated, in the face of a Court instruction ordering the jury to consider it to have been so as to Glinski and Berti. *See* Pl.'s Mem. Supp. Part. Summ. J. at 13 (arguing that the jury's verdict against Berti and Glinski on fabrication of evidence meant they "must have found, in conformity with the instruction they were given, that Berti and Glinski[, in preparing the December 14 Report,] knowingly joined a conspiracy with Villardita and Johnson with whom they shared the common goal to violate Plaintiff's rights by fabricating evidence regarding Plaintiff's whereabouts on November 16"). Such a posture would inflict substantial prejudice upon Villardita and Johnson, making the application of collateral estoppel in this instance fundamentally unfair.

This relates closely to the second factor that would make collateral estoppel unfair in this circumstance—the significant potential for jury confusion. As Chief Judge Pallmeyer noted in *Phillips*, a reasonable jury is unlikely to understand that a fact can be decided as to certain defendants, but undecided as to others. Instead, jurors are likely to believe that there is nothing left for them to decide, regardless of what the jury instructions say. *See* 5/9/18 Tr., *Phillips v. City of Chi.*, No. 14 C 9372 (N.D. Ill.), ECF No. 170 at 3:12–16 ("This issue has been decided with respect to Defendants X and Y but not with respect to Defendant Z, and the evidence is the

same. I'm not sure that really puts them in any kind of a situation where they have anything to decide."). This is precisely the type of issue "distortion" that commentors have identified. Accordingly, the significant potential for jury confusion also weighs against the application of collateral estoppel in this case.

On the other side of the ledger, there is little benefit to be gained by the doctrine's application. Whether the December 14 Report was (or was not) fabricated will be a significant issue that will be tried, regardless of whether Glinski and Berti are precluded from contesting the issue. Both Plaintiff and the remaining Defendants will introduce evidence to prove their respective positions. And the parties undoubtedly will ask the jury to make a finding as to this issue during their closing statements. As such, there is little judicial economy to be gained by applying collateral estoppel here.

For these reasons, the Court finds that the application of nonmutual offensive issue preclusion in this case against Defendants Glinski and Berti would substantially prejudice the remaining Defendants at trial, result in significant risk of jury confusion, and not materially enhance the doctrine's goals—"protecting litigants from the burden of religitating an identical issue" and "promoting judicial economy by preventing needless litigation," *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Accordingly, Plaintiff's request that Glinski and Berti be precluded from contesting the fabrication of the December 14 Report at trial is denied.

**B.     Summary Judgment Is Otherwise Inappropriate**

For the sake of completeness, the Court notes that, even assuming, for the sake of argument, that the Court were to apply the doctrine of collateral estoppel to prohibit Glinksi and Berti from contesting the fabrication of the December 14 Report, genuine issues of material fact nevertheless would forestall summary judgment. And to assist the parties as they prepare for trial, the Court will address two of the remaining issues raised in the briefs—whether the prosecution used the report against Taylor during the criminal trial, and whether the summary judgment record conclusively shows that the use was material to the jury's verdict.

   **a.     Whether the Report was used against Taylor**

In opposing summary judgment, Defendants argue that the December 14 Report was not used against Taylor in his criminal trial. Defendants are incorrect. Although the report itself was not admitted into evidence, as the Court has previously noted, the *contents* of the fabricated report certainly were. *Taylor v. City of Chi.*, No. 14 C 737, 2019 WL 4597383, at *15 (N.D. Ill. Sep. 23, 2019). Indeed, the December 14 Report was discussed at length during Officer Glinski's cross- and redirect examinations, including by reference to the document itself, which was used to refresh Officer Glinski's recollection. *See* Mot., Ex. 37, 9/5/95 Trial Tr. at N-118:4–N-122:4; N-138:24–N-149:24; *People v. Taylor*, No. 93-7106 (Cook Cty. Cir. Ct.), ECF No. 808-40.

Nonetheless, Defendants maintain that, because the report itself was not admitted in evidence, it was not "introduced against" a defendant for purposes of a

17

fabrication of evidence claim. But it is no secret why the prosecution did not attempt to admit the December 14 Report during Taylor's criminal trial; police reports typically are not admissible (and certainly not when offered by the prosecution) due to the rule against hearsay. *See* Ill. R. Evid. 803(8)(b); *see also* Fed. R. Evid. 803(8)(A)(ii) (providing the same exclusion).

More to the point, although the prosecution did not seek to admit the report in evidence, the prosecution noted the existence of the report before the jury and discussed the contents of the report during Glinski's examination. In this way, the prosecution did use the December 14 Report against Taylor, and that is all that is required, even under the Seventh Circuit's recent decision in *Patrick*. *See Patrick*, 974 F.3d at 835 (holding that the trial court's fabrication-of-evidence instruction was erroneous because "it failed to explain that Patrick had the burden to prove that the fabricated evidence was *used* against him at this criminal trial and was material") (emphasis added).

### b. Whether the Report was material

To prevail on his fabrication-of-evidence claim, Taylor also must establish that the December 14 Report was material to the verdict. That is, Taylor must show "a reasonable likelihood the evidence affected the judgment of the jury." *Patrick*, 974 at 835. Plaintiff claims that the record is indisputable that the police report was material to the jury's verdict. This is incorrect.

During the criminal trial, the closing statements from both Taylor and the state reflected the importance of Taylor's location at the time of the murders. The

18

State began its closing arguments with a focus on Taylor's alibi and arguing that he was *not* in police custody at the time of the murders. The State's attorney explained that "the issue for [the jury] to decide is where was Daniel Taylor," in custody, or at the scene of the murders; the state further suggested that the officers who signed Taylor's bond release form, the foundation of his alibi, were likely mistaken. PSOAF, Ex. 142, 9/7/95 Trial Tr. at 226:1–228:16, *People v. Taylor*, No. 93-7106, ECF No. 501-16. But the State's closing argument did not emphasize the December 14 Report as proof that Taylor was not in custody at the time of the murders. Instead, the State relied primarily on Taylor's confession, the possibility of a clerical error by the officers who testified that Taylor was in custody, and the testimony of Adrian Grimes that Taylor was not in custody at the time of the murders. *Id* at 228:17–232:9.

Based on this, a reasonable jury in this case could conclude that Glinski's testimony as to the December 14 Report was so thoroughly uncredible that the jury in the criminal case gave it no weight, yet relied on the other evidence to reject Taylor's defense that he was in jail at the time of the murders. While this is not the most likely scenario, it would not be an unreasonable one. Accordingly, the Court concludes that there exists a genuine dispute of material fact as to the element of materiality, and Plaintiff's motion for summary judgment is denied on this independent ground as well.[5]

---

[5] Given this, the Court finds no need to prolong the discussion by analyzing whether Taylor suffered injury as a result of the fabrications in the December 14 Report.

## IV. Conclusion

For the reasons given above, Taylor's motion for partial summary judgment as to Count II is denied.

**IT IS SO ORDERED.**                    **ENTERED: 9/27/21**

*[signature]*

**John Z. Lee**
**United States District Judge**