# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL TAYLOR,** | ) | |
| | ) | |
| **v.** | ) | **14 C 737** |
| | ) | |
| **CITY OF CHICAGO, CHICAGO** | ) | **Judge John Z. Lee** |
| **POLICE OFFICERS ANTHONY** | ) | |
| **VILLARDITA, THOMAS JOHNSON,** | ) | |
| **BRIAN KILLACKY, TERRY** | ) | |
| **O'CONNOR, RICK ABREU, ROBERT** | ) | |
| **DELANEY, SEAN GLINSKI,** | ) | |
| **MICHAEL BERTI, and** | ) | |
| **UNIDENTIFIED EMPLOYEES OF** | ) | |
| **THE CITY OF CHICAGO,** | ) | |
| | ) | |

## ORDER

The Court held a hearing regarding the parties' significant motions in limine on September 29, 2021. This order memorializes the rulings made by the Court at the hearing regarding (1) Plaintiff's motions in limine 2–4, 7, and 9, ECF Nos. 573, 590, 574, 575, and 652; (2) Officer Defendants' motions in limine 1, 2, 17, 18, 22, and 27, ECF Nos. 623, 639, 640, 650, 651, and 644; and (3) City Defendant's motions in limine 1 and 2, ECF No. 577.

As for the Daubert motions, the Court will provide the parties with an order elaborating on its September 30, Order, ECF No. 848, shortly.

# I.    **Gang Evidence**[1]

Both parties agree that some evidence that Taylor and his co-defendants were gang members and some evidence surrounding that membership is relevant and should be admitted. The disagreement is over scope. Accordingly, Plaintiff's motion in limine 2 and Officer Defendants' motion in limine 18 are each granted in part and denied in part.

The fact that Taylor and co-defendants were members of the Vice Lords gang, that they knew each other through their membership in the gang, and that they sold drugs in the pertinent time period are relevant to Defendants' theory of the case. And, indeed, they may be relevant to Plaintiff's theory of the case as well, with respect to why the police targeted these individuals as opposed to others. Moreover, to the extent that Defendants will be offering evidence regarding certain details about Taylor's membership in the gang and his knowledge of gang procedures and affairs to corroborate the truthfulness of Taylor's confession, they should be allowed to do so, because extrinsic facts may be used to establish the truth of statements made during a confession. However, indiscriminate references to gangs, gang membership, and gang activity, when unmoored to the issues that the jury will need to decide, carry with them substantial risk of prejudicing Plaintiff.

Accordingly, parties will be permitted to present evidence as it relates to Taylor and his co-defendants and (1) gang membership, (2) the fact that they sold drugs as part of a gang, (3) any linkage between their gang membership and the murders in

---

[1] Plaintiff's motion in limine 2, ECF No. 573; Officer Defendants' motion in limine 18, ECF No. 640.

question, (4) any linkage between their gang membership and the investigation that led to their arrest, and (5) their membership in the gang and Taylor's knowledge of gang procedures and affairs to the extent such facts are used to corroborate the truthfulness of Taylor's confession. Such facts will be limited to the time period during which the events took place—that is, 1992. In sum: to the extent that Defendants want to offer gang-related evidence, it must be closely tied to Defendants' defenses and theory of the case.

Defendants may also refer to gang membership and other gang-related facts for the purpose of establishing bias and attacking the credibility of witnesses during cross-examination. This includes references to "Willie Lloyd" and "Scorpio." However, before doing so, they should alert the Court and be able to establish grounds for admission during a proffer.

## II.  <u>Mental Health Records</u>[2]

At this juncture, it is not clear whether the medical records from Yellowstone Treatment Center will be admissible. They will certainly not be admitted unredacted, for the reasons discussed below. As it is unclear at this time what specifically Defendants will offer in evidence or in what context, the Court cannot rule on these motions at this time. That said, in light of the issues raised in the parties' motions, the following guidance should inform any attempts to admit Plaintiff's Yellowstone Treatment Center records.

---

[2] Plaintiff's motion in limine 3, ECF No. 590; Officer Defendants' motion in limine 27, ECF No. 651.

## A.    Hearsay

In many places, the Yellowstone records merely summarize prior psychiatric records.  Thus, to offer those portions in evidence, the parties must keep in mind that the records contain two (or more) layers of hearsay.

To the extent that the Yellowstone Records recount statements made by Taylor to professionals at Yellowstone, such statements are statements by a party opponent and are not hearsay.  Moreover, if a party wants to move other portions in, such as the portions that summarize prior psychiatric records, under the business records exception to the hearsay rule, the offering party must provide the requisite foundation under Rule 803(6) or Rule 902.

## B.    Relevance and Prejudice

While prior mental health records may be relevant to the issue of damages, there is little reason to believe that medical records from many years ago (some before Taylor was even 10 years old) would have much probative value in this regard. On the other side of the ledger, the prejudicial impact would be significant. Thus, until and unless the Defendants can offer evidence of how Plaintiff's mental health records from age 8 are relevant to Taylor's damages claim, the evidence from the Yellowstone Records will be limited to the present impressions of therapists at the treatment center of Plaintiff when he was age 17.

What is more, Defendants will not be permitted to offer evidence of Plaintiff's "homicidal ideations" as recorded in the Yellowstone Records. Defendants argue that these records are relevant to showing that Taylor had intended to commit the

murders all along or had the character to commit such murders. But given the time span between when the statements were made and the murders at issue, their probative value to support Defendants' theory is extremely low, while the prejudicial impact on Taylor would be significant. In essence, this is pure propensity evidence, and it will be barred.

The Court turns next to Defendant's expert Michael Welner. As an expert, he will be permitted to rely on the Yellowstone records generally to opine that Taylor has demonstrated certain mental attributes that would make him less susceptible to coerced confessions. But he will not be allowed to testify as to the contents of specific records, unless Plaintiff opens the door on cross-examination. And, even then, Defense counsel is instructed to let the Court know before referencing specific statements in the medical records during re-direct examination.

Defendants may also refer to the records to cross-examine Richard Leo, to the extent that he testifies that Taylor has particular characteristics that would have made him more susceptible to give a coerced confession. But again, Defense counsel should give the Court notice before doing so.

## III.    Statements by Taylor's Counsel in Prior Proceedings[3]

Plaintiff's motion 7 and Officer Defendants' motion 22, addressing defense counsel's use of statements by Plaintiff's past attorneys, are each granted in part and denied in part. Although an attorney's statements can be admissions of a party opponent under 801(d)(2)(D), the law of the Seventh Circuit has recognized that

---

[3] Plaintiff's motion in limine 7, ECF No.754; Officer Defendants' motion in limine 22, ECF No. 644

determining whether to apply this hearsay exemption to attorneys' statements requires "a more exacting standard." *United States v. Harris*, 914 F.2d 927, 931 (7th Cir. 1990). In *Harris*, the 7th Circuit outlined certain factors that a court should consider in determining whether a situation meets this standard:

- The effective assistance of counsel of your choosing: This factor is not implicated in Taylor's case—he had counsel of his choosing at his criminal trial and as far as we know, his counsel did not withdraw.

- Privilege against self-incrimination: Because all of Defendants' proffered statements involve statements made on the record (Plaintiff's statements in his suppression hearing, in his depositions, and in various petitions), these statements are unlikely to run into a self-incrimination problem.

- Impairment of vigorous advocacy on Taylor's behalf: This factor raises the biggest issue for the Court. Other circuits have noted the risk that use of an attorney's statements against his client in a later proceeding might chill advocacy by that attorney. This risk is heightened when we consider using *omissions* by prior counsel to be used against his clients. The obvious incentive is for defense counsel to throw all theories at the wall and see what sticks, even when they think their client won't be believed or when they think an argument is weak. Allowing strategic decisions in a criminal case to become incriminating omissions in a subsequent civil case will create a

significant chilling effect on the ability of criminal defense attorneys

to represent their clients.

Having evaluated the factors listed in *Harris*, Defendants will be allowed to offer the statements contained in Plaintiff's certificate of innocence petition (to the extent they are offered to show that Plaintiff made contradictory statements later) under 801(d)(2)(D).

However, defense counsel's plan to use the absence of a theory or statement in Plaintiff's suppression motion under the theory of impeachment by omission creates significant risks of impairing vigorous advocacy. Indeed, there are lots of strategic reasons that an attorney may or may not pursue a particular defense theory. Therefore, the probative value of the absence of a theory or statement is low, while the risk of prejudice and jury confusion is high. After considering the factors in Harris, the Court will not allow Defendants to use the suppression motion under Rule 801(d)(2)(D).

Defendants also may not use at trial Taylor's assertion that his criminal defense counsel was "ineffective" in his First Amended Verified Supplemental Petition to Vacate Judgment. Although Defendants argue that it is relevant to the issue of whether Taylor's criminal defense attorney used "reasonable diligence" for purposes of Plaintiff's *Brady* claim, this is not correct. The gist of the ineffective assistance of counsel claim was counsel's failure to obtain records from a Maryville shelter; however, such evidence is not *Brady* material. *Strickler v. Greene*, 527 U.S.

263, 282 (1999). Even if it were relevant, its prejudicial value and risk of confusing the jury substantially outweighs whatever probative value it may have.

With respect to Plaintiff's motion 7, the Court will not bar entirely impeachment based on prior counsel's statements at this time. The Court will have to make this determination once it sees what the statements are and how they will be offered at trial.

## IV.     Prior Arrests and Convictions[4]

Plaintiff's motion 4 and Officer Defendants' motion 17 are each denied in part and granted in part. Defendants will be allowed to offer evidence of Taylor's prior convictions if they can lay proper foundation that the officers were aware of Plaintiff's prior convictions at the time they charged him with murder. Such evidence is relevant to the issue of probable cause as it relates to Daniel Taylor's arrest and the malicious prosecution claims. As for Taylor's prior arrests, the defense will only be allowed to offer evidence of the number of the arrests, not the specific crimes for which he was arrested. Prior arrests may be relevant to Defendants' probable cause argument, but the Court finds that admission of the charges underlying the arrests would be highly prejudicial to Plaintiff and substantially outweigh the information's probative value under Rule 403.

Furthermore, Defendants will not be allowed to offer prior convictions of Plaintiff's co-defendants, as they fall well outside the bounds of impeachment under rule 609 and are otherwise irrelevant. Specifically, Defendants argue that criminal

---

[4] Plaintiff's motion in limine 4, ECF No. 575; Officer Defendants' motion in limine 17, ECF No. 639.

8

convictions of Taylor's co-defendants are relevant because they go to show probable cause in making certain arrests. However, only the probable cause for arresting Taylor is at issue in this case. Therefore, the probative value of co-defendants' criminal history is quite low, while the risk of prejudice to Taylor is substantial.

Furthermore, the Seventh Circuit has established five factors to guide district court in determining whether the probative value of a conviction outweighs its prejudicial effect: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004). These factors can also be used to inform the analysis in a civil rights case. *Jones v. City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *9 (N.D. Ill. Jan. 31, 2017). Applying those factors here:

- Co-defendants' past crimes, while violent in nature, are not crimes indicative of truthfulness or untruthfulness, with the exception of Rodney Matthews, whose last arrest for robbery was more than 20 years ago. This weighs in favor of exclusion.

- The most recent arrest of any of Plaintiff's co-defendants was in 2001; this also weighs in favor of exclusion.

- This factor is clearly directed more towards criminal defendants, but the Court notes that none of the co-defendants' past crimes are very similar to murder. This weighs in favor of exclusion.

- The testimony in question is very important. This weighs in favor of admission.

- Credibility is an important issue in this case, as much of the evidence is the word of the officers against the word of Taylor and his co-defendants.

After weighing these facts and particularly given the centrality of credibility to this case, the Court will allow Defendants to admit evidence of how many prior convictions Taylor's co-defendants had at the time of their arrest for the Lassiter/Haughabook murders. Defendants also may introduce the number of times co-defendants had been arrested and inquire as to whether the co-defendants were ever subject to police interrogation as a result. These facts are relevant to the voluntariness of the co-defendants' confessions, which will be a disputed issue in this case.

## V.     Certificates of Innocence[5]

The Court next addresses the admissibility of Certificates of Innocence. Officer Defendants' motion in limine 1 is denied. Plaintiff's Certificate of Innocence is admissible, assuming all other proper foundation is laid. The Court finds that it is highly probative to Plaintiff's malicious prosecution claim, as it tends to prove favorable termination of his criminal case. The Seventh Circuit recently affirmed the admission of Deon Patrick's Certificate of Innocence in *Patrick v. City of Chicago*, 974 F.3d 824, 833¬-34 (7th Cir. 2020). In the same opinion, the Seventh Circuit approvingly cited to a limiting instruction in *Harris v. City of Chicago*, No. 14 C 4391,

---

[5] Officer Defendants' motions in limine 1 and 2, ECF Nos. 623 and 650.

2018 WL 2183992, at *5 (N.D. Ill. May 11, 2018), and this court will give that jury instruction as well.

The co-defendants' Certificates of Innocence likely are also admissible, given proper foundation, although the actual evidence at trial will have to inform the ultimate decision on these certificates. It is true that Taylor does not have the burden to show termination indicative of innocence for his criminal co-defendants. But to the extent that Defendants will argue that Taylor and his co-defendants committed the murders in concert, and because all of the co-defendants' confessions implicate Taylor, the Certificates of Innocence of the co-defendants may be relevant to rebut the strength of those confessions and Defendants' theory of the case. To the extent the court admits these Certificates in evidence, the court will provide the jury with the limiting instruction as well.

## VI. <u>City's Liability and the Relevance of Unnamed City Employees</u>[6]

Finally, the Court cannot rule on the City Defendant's proposed stipulation or the potential liability of unnamed City Employees with the record before it; any rulings will have to await the evidence at trial.

First, the Court agrees with Plaintiff's interpretation of *Thomas v. Cook County Sheriff's Department*, that a finding of *Monell* liability does not require that the agent of the city be named. 604 F.3d 293, 305 (7th Cir. 2010) ("A municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict."). But the only scenario in which this becomes

---

[6] Plaintiff's motion in limine 9, ECF No. 652; City Defendant's motions in limine 1–2, ECF No. 577.

11

an issue is if the individual Defendants disclaim their own responsibility while placomg the blame on another, unnamed employee of the City of Chicago. There is nothing in the record that indicates that Defendants will do this.  However, the court will have to see how the evidence unfolds at trial.

Accordingly, the Court will rule on this issue at the close of the evidence at trial.  The parties should raise it then.

**IT IS SO ORDERED.**                    **ENTERED: 10/1/21**

_____
**John Z. Lee**
**United States District Judge**